A. P. Borden et al. v. Trespalacios Rice and Irrigation Company.

No. 1389. Decided March 23, 1905.

**1.—Eminent Domain—Irrigation Corporation.**

A corporation organized under articles 642 and 704, Revised Statutes, and the Acts of March 9 and March 21, 1895 (Rev. Stats.. arts. 3115-3331), for the construction of canals, etc., for the declared purpose of "irrigation and milling, navigation and stockraising" had authority by the statutes to condemn private property for the construction of a canal for irrigation. (Pp. 505-507.)

**2.—Same—Identity With Corporation Empowered to Condemn.**

The fact that the purposes declared by the corporation in its charter included milling navigation and stockraising, did not prevent it being a corporation for irrigation such as was authorized to exercise eminent domain by article 704, Revised Statutes, nor did the fact that it omitted in its char-

ter some of the purposes embraced in the Act of 1895 deprive it of identity with the class of corporations there authorized to condemn land; it was not required to include in its purposes all those authorized by that act, in order to exercise the powers conferred by it; nor did the fact that it included the purpose of navigation affect its power to condemn for irrigation purposes. (Pp. 506, 507.)

### 3.—Constitutional Law—Statute—More Than One Purpose.

The Act of March 9, 1895, was not unconstitutional as embracing, both in its caption and in the body of the law, more than one subject. Const., art. 3, sec. 35. The general subject was the single one of providing a method for the acquisition and a means for the conveyance of water, though authorized for use in the various industries named in the act. (Pp. 507, 508.)

### 4.—Same.

While appearing to authorize the formation of corporations for various business enterprises other than the furnishing water, the act does not, in fact, create such authority, but refers, therefor, the companies named to the general incorporation law. (P. 508.)

### 5.—Constitutional Law—Caption of Statute—Eminent Domain.

Though the title to the Act of March 9, 1895, does not include, in the purposes expressed, the acquisition of right of way over land, such purpose is implied from the mention of canals, ditches, etc., authorized to be constructed. (P. 508.)

### 6.—Constitutional Law—Statute—Where Operative—Designation of Locality.

The Act of March 9, 1895, was not void because of vagueness in designation of the localities to which it was to apply as those where "by reason of the insufficient rainfall * * * irrigation is beneficial." Such law operates thoughout the State; but the conditions named must exist in order to make the use a public one; and the question of public use could be put in issue in every case where it was sought to take private property under the right of eminent domain. (Pp. 508, 509.)

### 7.—Constitution—Eminent Domain—Public Use.

Property is taken for public use, as intended by the Constitution, only when there results to the public some definite right or use in the business or undertaking to which the property is devoted, resulting from the law itself and not dependent entirely on the will of the donee of the power and is not so taken when the enterprise merely promotes the prosperity and comfort of the country. (P. 509.)

### 8.—Same.

The manner in which the right of use in the property taken is secured to the public is immaterial, and the intention to secure such use may be gathered from all the provisions of the statute showing that the recipient of the power is charged with duties to the public; the courts can not inquire into the wisdom or expediency of the regulations adopted by the Legislature to that end further than to see that a public use is secured. (Pp. 509, 510.)

### 9.—Same—Irrigation Companies.

Construing various provisions of the Act of March 9, 1895, concerning irrigation, it is held to confer on owners of land contiguous to the proposed irrigation ditch a right, though indefinitely defined, to share in the distribution of its waters for irrigation of their lands, and to impose a corresponding duty, subject to reasonable regulation by the State, upon the owners of the irrigation plant, sufficient to constitute a public use therein and to support the grant of power to such company to exercise eminent domain for condemning a right of way for its ditches over the land of others. (Pp. 509-512.)

Error to the Court of Civil Appeals for the First District, in an appeal from Matagorda County.

Borden and others sued the Trespalacios Rice and Irrigation Company in trespass to try title. Plaintiffs showed title to the land except so far as affected by condemnation proceedings under which defendant had taken possession of a part of same for the construction of its irrigation ditch. Judgment was given for defendants, sustaining their claim to the

rights so acquired. Plaintiffs appealed, and on affirmance of the judgment obtained writ of error from the Supreme Court.

*Proctors,* for plaintiffs in error.—1. The Legislature has not in any wise attempted to confer the power of eminent domain upon such a corporation as appellee.

A corporation can not exercise the right of eminent domain unless it can show, as warrant for such exercise, that it is a corporation of the precise nature and character as is defined for the donee of such power under some statute of the State. San Antonio & A. P. Ry. Co. v. Southwestern T. & T. Co., 93 Texas, 313; State v. Salem Water Supply Co., 5 Ohio Cir. Ct., 58; Southwest Missouri Light Co. v. Sheurich (Mo.), 73 S. W Rep., 496; Mills on Em. Dom., sec. 49.

A corporation organized under subdivision 23 of the general incorporation act, with charter purpose defined as "the construction, maintenance and operation of dams, reservoirs, lakes, canals, flumes, laterals and other necessary appurtenances for the purpose of irrigation and milling, navigation and stockraising," can not exercise the power of eminent domain conferred by a statute defining the donee of such power as "a canal corporation for the purpose of irrigation," or by another statute defining the donee of such power as a corporation organized for the purpose of "constructing, maintaining and operating canals, ditches, flumes, feeders, laterals, reservoirs, dams, lakes and wells, and of conducting, transferring and furnishing water to all persons entitled to the same for irrigation, mining, milling, to cities and towns for waterworks, and for stockraising, and for the purpose of building storage reservoirs for the collection and storage of water for the purposes before mentioned." Rev. Stats., art. 642, subdiv. 23, art. 704, subdiv. 6; art. 8 of Act of April 23, 1874, 8 Gammel's Laws, 136; Secs. 11 and 12 of Act of March 19, 1895, 10 Gammel's Laws, 755; Rev. Stats., arts. 3125, 3126.

2. That if the Legislature has made any attempt to confer the power of eminent domain upon such a corporation as appellee, same is confined to section 12 of the Act of March 19, 1895, now constituting article 3126 of chapter 2, Title 60, of the Revised Statutes, known as the Irrigation Law of 1895.

Appellee corporation is plainly one chartered under subdivision 23 of article 642, Revised Statutes. Rev. Stats., art. 642, subdiv. 23.

Appellee corporation can claim no power of eminent domain by virtue of the provisions of section 55 of article 642, inasmuch as the corporation provided for by section 55 is a drainage and not an irrigation corporation, and therefore a corporation of entirely separate and distinct nature, and the charter purposes of subdivision 23 and subdivision 55 could not be legally combined in the same corporation. Article 642, subdiv. 55; Ramsey v. Tod, 95 Texas, 614.

Appellee can not claim any power of eminent domain by virtue of article 3112, being section 5 of the Act of February 10, 1852, since said

article is plainly applicable to individual owners and not corporations, and furthermore because such act is plainly unconstitutional as authorizing condemnation for a plainly private use. Also, in view of the time of the enactment of said Act of February 10, 1852, same is plainly without reference to irrigation corporations of the nature of appellee. Act of February 10, 1852, 3 Gammel's Laws, 958.

Nor can appellee corporation claim the right of eminent domain, if any, conferred upon a canal corporation for irrigation purposes by section 6 of article 704. This is true because section 6 of article 704, construed with reference to other provisions of the Act of April 23, 1874, of which it formed part, plainly has reference only to a canal corporation for irrigation alone, and not to a canal corporation for irrigation combined with any other purpose. Art. 704, subdiv. 6; Act of April 23, 1874, 8 Gammel's Laws, 136; the entire act concerning private corporations, constituting chapter, 97 of Acts of the 14th Leg., 8 Gammel's Laws, 122-140; San Antonio & A. P. Ry. Co. v. Southwestern T. & T. Co., 93 Texas, 313; Southwest Missouri Light Company v. Sheurich, 73 S. W. Rep., 496; Black on Interp. of Laws, p. 212.

The nearest analogy between a corporation such as appellee and any corporation authorized to exercise the power of eminent domain is that which exists between subdivision 23 of article 642, under which appellee is incorporated, and section 11 of the Act of March 19, 1895. Rev. Stats., art. 642, subdiv. 23; Sections 11 and 12 of Act of March 19, 1895, 10 Gammel's Laws, 751; Rev. Stats., arts. 3125, 3126.

If any power of eminent domain, therefore, exists in appellee, it must be that power alone, if any, which is conferred by the Act of March 19, 1895, now constituting chapter 2 of title 60 of the Revised Statutes.

3. That said entire irrigation act of 1895 is unconstitutional under section 35, article 3, of the State Constitution, because expressing more than one subject both in the caption and body of said act.

An act, the caption of which reads "An act to encourage irrigation, and to provide for the acquisition of the right to the use of water and for the construction and maintenance of canals, ditches, flumes, dams, reservoirs and wells for irrigation, and for mining, milling, the construction of waterworks for cities and towns, and stockraising," and which in the body of said act contains provisions equally as comprehensive as the caption, is unconstitutional under section 35, article 3, because embracing both in the caption and body of the act more than one subject. See original act and caption correctly quoted in the proposition, being the act of March 19, 1895, 10 Gammel's Laws, 751-756; Sutherland on Stat. Const., secs. 78, 79, 85, 90 and 103; Giddings v. City of San Antonio, 47 Texas, 548; Note to Bobel v. People, 64 Am. St. Rep., 70-107.

4. That said entire act is further void for uncertainty in description of those portions of the State within the purview of such act.

This Act of March 19, 1895, is, by its terms, made applicable only within "those portions of the State of Texas in which, by reason of the

insufficient rainfall, or by reason of the irregularity of the rainfall, irrigation is beneficial for agricultural purposes," and is therefore void for uncertainty in description of those portions of the State to which the act applies.    Sections 1, 2, 3, 4, 6, 8, 10, 11 and 12 of Act of March 19, 1895, being articles 3115, 3116, 3117, 3118, 3120, 3122, 3124, 3125 and 3126, Rev. Stats.

The territorial scope of this act is not a matter of which a court can take judicial cognizance.    McGhee Irrigation Ditch Co. v. Hudson, 21 S. W. Rep., 175; Sutherland on Stat. Const., sec. 293, p. 376.

The territorial scope of this act therefore, if the definition be sufficiently accurate to raise any issue, would be an issue of fact to be passed upon by a court or jury like any other fact in the case.· McGhee Irrigating Ditch Co. v. Hudson, 85 Texas, 590; McGhee Irrigating Ditch Co. v. Hudson, 21 S. W. Rep., 175.

The act indicating an intent to confine its territorial operation to portions of the State and not permit the act to embrace the entire State, and the act failing to provide a sufficiently definite test by which the territorial scope of the act may be determined, it should be held void for uncertainty.

5.    That all that portion of said Act of 1895 which refers to eminent domain, namely, section 12, or article 3126, in so far as it seeks to confer a right of eminent domain over land, is unconstitutional under section 35, article 3, of the Constitution, because of the restriction of the caption of such act of the power of eminent domain "to the acquisition of the right to the use of water."   ·

In an act, the caption of which is "An act to encourage irrigation, and to provide for the acquisition of the right to the use of water, and for the construction and maintenance of canals, ditches, flumes, dams, reservoirs and wells, for irrigation and for mining, milling, the construction of waterworks for cities and towns, and stockraising," there can not be included a provision authorizing the acquisition, by the right of eminent domain, of a right of way over land, same being excluded by the restrictive provision in the caption, which provides "for the acquisition of the right to use water."    Adams & Wickes, v. San Angelo Waterworks Co., 86 Texas, 485; Note to Bobel v. People, 64 Am. St. Rep., 78.

6.    That also said section 12 (or article 125) of said Act of 1895 is unconstitutional, under section 35 of article 3 and section 17 of article 1, of the Constitution of Texas, because said power of eminent domain is conferred upon such various donees and for such various purposes as to exclude any idea that the Legislature was conferring the power of eminent domain for a public use, and said donees and various purposes are so combined that they are not capable, in legal sense, of a separation so as to uphold any portion of the grant of eminent domain attempted to be conferred by said section 12.

If the caption of an act be so comprehensive as to expressly include a particular subject matter of the act, then, upon a constitutional objection

being urged to such subject matter, by no rule of construction can same be disregarded, and the other portions of such statute be upheld; but if the portion objected to be unconstitutional, the entire statute must be held void. Sutherland on Stat. Const., sec. 103, pp. 121-123; People v. Parks, 58 Cal., 624-628; Western Union Tel. Co. v. State, 62 Texas, 630.

If in a statute of eminent domain a private use be combined with a public use in such a way that the two can not be separated, the whole act is void. Lewis on Em. Dom., sec. 206, and cases cited.

A statute of eminent domain, such as article 3126 of our Revised Statutes, which seeks to confer the power indiscriminately upon corporations, associations of persons, individuals, and cities and towns, to condemn lands for canal rights of way and sites for dams and storage reservoirs and riparian rights, for such diverse purposes as irrigation, mining, milling, the construction of waterworks for cities and towns, and stockraising, is unconstitutional in its entirety; since it shows that by its indiscriminate delegation of such power to such various classes of donees, and for such various purposes, the Legislature wholly lost sight of the inhibition of section 17, article 1, of the Constitution, against the taking of private property for any save a public use; and those portions of said act which authorize the condemnation for private use are so embraced in the caption of the act of which said statute forms part, and are so combined in the statute itself, that they can not be separated. See authorities under two preceding propositions; Caption of Act of 1895, 10 Gammel, 751; art. 3126, Rev. Stats.

7. That, in the present legal status of corporations such as appellee, the Legislature can not confer upon them the right of eminent domain without further imposing upon them some reciprocal public duty, inasmuch as such appropriation of private property by these corporations, at present, is per se a taking for private use, since no right which can be enforced in invitum against the appropriator is left in the public, or any portion of the public, to any use of the private property taken, and therefore such taking is plainly violative of section 17, article 1, of the State Constitution.

While the question, what is a public use, is a matter primarily to be considered by the Legislature, yet, in any given case of an actual appropriation of private property by the power of eminent domain, it is a judicial prerogative to decide whether or not the Legislature has correctly determined this question; and, therefore, so far as any given case is concerned, it is for the courts, and not for the Legislature, to decide the question of what is a public use. Lewis on Em. Dom., sec. 158; Mills on Em. Dom., secs. 10 and 11; 10 Am. and Eng. Enc. of Law, new ed., 1069; 3 Cook on Corp., sec. 905; Exhaustive note to 22 Am. Dec., 688-691; Note to 42 Am. St. Rep., 406; Shoemaker v. United States, 147 U. S., 282; United States v. Gettysburg Elec. Ry. Co., 160 U. S., 685; Mississippi, etc., Boom Co. v. Patterson, 98 U. S., 403; Fallbrook Irr. District v. Bradley, 164 U. S., 112; Ryerson v. Brown, 24 Am. Rep., 564.

The power of eminent domain, in its abstract sense, is the power of a sovereign State to appropriate private property to particular uses for the purpose of promoting the general welfare. This power was originally, by the people in their sovereign capacity, delegated to the Legislature in the general grant of legislative power. In the absence of any constitutional restriction the Legislature could take private property, therefore, for any purpose calculated to advance the general good. By the constitutional provision, however, the people have said to the Legislature, this power can not be exercised except for "public use." The words "public use," therefore, as used in our State Constitution, must be construed as a limitation upon the power of the Legislature as regards eminent domain, and in no sense as a grant of such power. Lewis on Em. Dom., secs. 1 and 163, and cases cited; Mills on Em. Dom., secs. 1 and 22; People ex rel. Third Avenue Ry. Co. v. Newton, 3 Law. Rep. Ann., 176; Rice v. Minnesota & S. W. Ry. Co., 66 U. S., 358.

The power of eminent domain should never be conferred by the Legislature upon any corporation, save a governmental corporation, unless the corporation upon which such power is conferred be a quasi public corporation upon which there is resting a reciprocal duty owed by the corporation to the public, or some portion of the public. Mills on Em. Dom., sec. 355; Kettle River Ry. Co. v. Eastern Ry. Co., 6 Law. Rep. Ann., 117; Memphis Freight Co. v. City of Memphis, 44 Tenn., 419; De Camp v. Hibernia Ry. Co., 47 N. J. L., 518; Ryerson v. Brown, 35 Mich., 333; Corrigan v. Coney Island Jockey Club, 2 N. Y. Misc. Rep., 512; 7 Am. and Eng. Enc. of Law, new ed., 638; Miners Ditch Co. v. Zellerbach, 99 Am. Dec., 300.

The true meaning of the term "public use," as employed in the Constitution, is not that use which either the Legislature or the courts may deem a public benefit or advantage; but the term means the same as use by the public, and is synonymous with the employment or application by the public of the thing taken. Therefore, the term means that, though the property is vested in private individuals or corporations, the public yet retain certain definite rights to the use or employment of the property. Lewis on Em. Dom., chap. 7, in its entirety, and especially secs. 163, 164, 165, 181, 182, 186, 188; Mills on Em. Dom., chap. 3, and especially sec. 22; Monograph note in 22 Am. Dec., pp. 686, 687; Note to Pittsburg N. & K. Ry. Co. v. Benwood Iron Works, 2 Law. Rep. Ann., 680; 17 Am. and Eng. Enc. of Law, new ed., 490, and notes 5 and 8; Varner v. Martin, 21 W. Va., 534; Tidewater Co. v. Coster, 18 N. J. Eq., 518; Charleston Nat. Gas Co. v. Low, 44 S. E. Rep., 410; In re Barre Water Co., 9 Law. Rep. Ann., 197; Pocantico Waterworks Co. v. Bird, 130 N. W., 249; Kettle River Ry. Co. v. Eastern Ry. Co., 6 Law. Rep. Ann., 117; Memphis Freight Co. v. City of Memphis, 44 Tenn., 419.

The Legislature can not constitutionally confer the power of eminent

domain upon an irrigation corporation under the present status of such corporation for two reasons: First. Because the Legislature has not imposed any reciprocal duty upon such corporation to the public, or any portion of the public. Second. Because any appropriation of property by said corporation is necessarily for a private use, in that the law reserves no right in the public, or any portion of the public, in and to any use or enjoyment of the property so taken. Act of March 19, chap. 2, title 60, Rev. Stats.

8. The condemnation in this particular case is one purely for a private use, and is for that reason not only unconstitutional under section 17, article 1, but is also further unconstitutional under section 19 of article 1 of the State Constitution and the Fourteenth Amendment of the Constitution of the United States as a taking without due process of law.

Both article 704 and article 3126 of the Revised Statutes of Texas are violative of section 19 of article 1 of the State Constitution and also the Fourteenth Amendment to the Constitution of the United States, in that if construed to warrant the taking of appellants' lands for the purposes defined in either of said articles, same is a taking for a private purpose, and amounts to a deprivation of appellants' property without due process of law. Fallbrook Irrigation District v. Bradley, 164 U. S., 112.

Unless appellants' property be taken for a public use, the taking amounts, in effect, to one without due process of law, it matters not how complete or full are the provisions as to the statutory tribunal to determine and assess damages. Same authorities.

*W. C. Carpenter, Horace B. Williams,* and *W. J. J. Smith,* for defendant in error.—At the time of the condemnation of the land in question, appellee had the power of eminent domain for the purposes of an irrigation company. Rev. Stats., art. 642, sec. 23; art. 704, art. 3115, and subsequent sections of chap. 2, title 60.

Appellee being a legal corporation for the purpose of irrigation, possesses all the powers and is subject to all the duties of any corporation organized for irrigation, and if it improperly combines in its corporate purposes any private purpose, this can be inquired into, if at all, only upon quo warranto in a direct proceeding instituted by the State for that purpose, and its powers as an irrigation company can not be attacked by appellant in this proceeding on that ground.

The land involved in this case was taken under condemnation proceedings, for the purpose of irrigation, and so far as this land is concerned the judgment of the County Court of Matagorda County is res judicata that it was taken for a public use and the judgment of condemnation can not be collaterally attacked. McGhee Irr. Ditch Co. v. Hudson, 85 Texas, 593.

The condemnation proceedings having been admitted in evidence, appellee was entitled to a judgment under the agreement of the parties

regardless of oral evidence, and if the oral evidence is not admissible for any reason, the introduction thereof was harmless.

The Legislature has granted to corporations such as appellee the power of eminent domain, both in the General Laws and under the Act of 1895.

The power of eminent domain conferred upon such corporations as appellee is not confined to section 12, of Act of March 19, 1895, but is conferred both in that act, and in the General Laws.

Article 704 of the Revised Statutes confers upon a corporation such as appellee the power of condemning a right of way for an irrigation canal. Crary v. Port Arthur Channel and Dock Co., 92 Texas, 275; San Antonio & A. P. Ry. Co. v. Southwestern T. & T. Co., 93 Texas, 313; Ramsey v. Tod, 95 Texas, 614; Lanning v. Osborne, 76 Fed. Rep., 319; State v. Telegraph Co., 11 Law. Rep. Ann., 665.

The fact that appellee was not incorporated for all of the purposes named in the Act of 1895 can in no way prevent its exercising the power of condemnation provided for in that act. Rev. Stats., arts. 3118, 3124, 3130, 3134.

If it be true that appellee can not exercise the power of eminent domain under the Act of 1895, it had full authority to do so under the general incorporation act. See authorities cited under foregoing propositions.

Appellants are not in a position to raise this question, for they did not make this objection to the introduction of the condemnation proceedings in evidence, and this objection was thereby waived. Rule 58; Texas & P. Ry. Co. v. Barron, 4 Texas Civ App., 550.

The irrigation act of 1895 does not contravene the provision of section 35, article 3, of the State Constitution, because it does not express more than one subject, either in the caption or the body of the act. An act, the caption of which provides for the general subject of a water supply for various industries, does not embrace in the caption more than one subject. State v. Bowers, 14 Ind., 195; Inhabitants of Montclair v. Ramsdell, 107 U. S., 147; Detroit v. Street Ry. Co., 184 U. S., 390; Cooley, Const. Lim., 7 ed., 206.

An act which has in its body provisions for a water supply to various industries does not provide for more than one subject within the meaning of the Constitution. Same authorities.

The Act of 1895 is not inoperative because it does not declare what parts of the State should be subject to its operation. The Act of 1895 pointed out portions of the State definitely ascertainable, and is therefore not void for uncertainty of description. McGhee Irr. Ditch Co. v. Hudson, 85 Texas, 587.

The title to the Act of 1895 is sufficiently comprehensive to permit the introduction in the body of the act of provisions for the power of eminent domain to acquire water rights and to construct canals.

The use of the words "to provide for the acquisition of the right

-to use water" is in no sense restrictive of the words "to provide for the construction of canals" and any means necessary or proper for the accomplishment of these ends may properly be introduced into the body of the act.  Powell v. Commonwealth, 15 Am. and Eng. Corp. Cases, 374; Robinson v. State, 15 Texas, 314; Note to Bobel v. People, 64 Am. St. Rep., 75; Ex parte Hernan, 77 S. W. Rep., 226; Paxton & H. Irr., etc., Co. v. Irrigation Co., 29 Law. Rep. Ann., 856.

The Legislature in the Act of 1895 made provision for the furnishing of water to various industries to which it was necessary, and as a. means of furnishing the water, conferred the power of eminent domain upon various donees, and the power of eminent domain may be lawfully exercised by such donees.

The Legislature has not combined public and private uses in the Act of 1895.  See cases cited in Lewis on Eminent Domain, chapter "What is a Public Use."

If it should be held that the Act of 1895 combines public and private uses, and that, therefore, parts of the acts were valid and parts invalid, the act is so constructed that the invalid parts can be stricken out and leave the act complete in itself, sensible, capable of being executed, and wholly independent of that which is rejected, and the enactment may therefore be upheld and enforced as to those parts which are valid.

The Legislature has rightfully and lawfully conferred upon corporations such as appellee the power of eminent domain, and appellee has lawfully exercised that power to secure a right of way for an irrigation canal.  Note to Bobel v. People, 64 Am. St. Rep., 75.

The courts will not disregard the legislative declaration that irrigation is a public use, unless it appears to the court that it is clearly and palpably a private use.  In re Bonds Madera Irr. Dist., 14 Law. Rep. Ann., 761; Tuttle v. Moore, 64 S. W., 591.

Irrigation as provided for in Texas is a public use.  Fallbrook Irr. Dist. v. Bradley, 164 U. S. 112; Lux v. Haggin, 69 Cal., 303; In re Bonds Madera Irr. Dist., 14 Law. Rep. Ann., 762; Turlock Irr. Dist. v. Williams, 76 Cal., 368; Price v. Irr. Co., 56 Cal., 431; Rialto Irr. Dist. v. Brandon, 37 Pac. Rep., 484; Cummings v. Peters, 56 Cal., 593; Aliso Water Co. v. Baker, 30 Pac. Rep., 537; Crall v. Irrigation Dist., 87 Cal., 140; Board of Directors of M. Irr. Dist. v. Tregea, 88 Cal., 334; Lindsay Irr. Co. v. Mehrtens, 97 Cal., 676; Paxton & Hershey Irr. Co. v. F. & M. I. Co., 29 Law. Rep. Ann., 856; Board of Directors of A. Irr. Dist. v. Collins, 64 N. W. Rep., 1090; Clark v. Irr. Co., 64 N. W. Rep., 241; Cummings v. Hyatt, 74 N. W. Rep., 414; Ellinghouse v. Taylor, 48 Pac. Rep., 758; Emerson v. Ditch Co., 18 Mont., 247; Salazar v. Smart, 12 Mont., 395; Umatilla Irr. Co. v. Barnhart, 30 Pac. Rep., 37; Wilterding v. Green, 45 Pac. Rep., 135; Miles v. Benton Township, 78 N. W. Rep., 1004; Prescott Irr. Co. v. Flathers, 55 Pac. Rep., 636; Downing v. More, 12 Colo., 316; Yunkers v. Nichols, 1 Colo., 551; Schilling v. Rominger, 4 Colo., 100; Wheeler v. Irr. Co., 17 Pac.

Rep., 491; Trippe v. Overacker, 1 Pac. Rep., 695; White v. Canal Co.,
43 Pac. Rep., 1029; Oury v. Goodwin, 26 Pac. Rep., 376; Atlantic Trust
Co. v. Irrigation Co., 79 Fed. Rep., 43; San Diego Flume Co. v. Souther,
90 Fed. Rep., 164; McGhee Irr. Ditch Co. v. Hudson, 85 Texas, 591;
Mud Creek Irr., etc., Co. v. Vivian, 74 Texas, 170.

The Texas statutes provide for the rights of the public and grant to
the public all the rights that in the nature of things can be granted,
and impose upon the irrigation company the duty of furnishing water
so long as it has it or controls it.  Price v. L. & I. Co., 56 Cal., 433;
Lanning v. Osborne, 76 Fed., 337; and cases cited under preceding
proposition.

The condemnation in this particular case is one purely for a public
use, and is constitutional under the Constitution of Texas and the
Constitution of the United States.

The condemnation proceedings in this case did not amount to a
taking of. land without due process of law.  Fallbrook Irr. Dist. v.
Bradley, 164 U. S., 112; Board of Directors of A. Irr. Dist. v. Collins,
64 N. W. Rep., 1090.

WILLIAMS, Associate Justice.—This case involves a contention
between the parties as to the validity of certain condemnation pro-
ceedings under which defendant in error claims a right of way for its
works over the land of Borden and others, who were plaintiffs in the
District Court.  The judgments of that court and of the Court of Civil
Appeals were in favor of defendant and the cause is before this court on
writ of error.

Defendant is a corporation chartered and organized under subdivision
23 of article 642 and article 704, Revised Statutes, and also under an
Act of 1895 (Laws 24th Leg., pp. 21-26 and pp. 27-28), the provisions
of which now constitute articles 3115-3131, Revised Statutes.  The
purpose declared in its charter is the construction, maintenance and
operation of dams, reservoirs, lakes, wells, canals, flumes, laterals and
other necessary appurtenances for the purposes of irrigation and milling,
navigation and stockraising in the county of Matagorda.

After its organization it filed, on March 5, 1902, with the county
clerk of Matagorda County, in accordance with section 6 of the Act of
1895, its sworn statement showing its intention to appropriate, for
irrigation purposes, the unappropriated waters of the ordinary flow or
underflow of the Colorado river and of constructing canals, laterals, etc.,
through which to convey said water for the irrigation of agricultural
land situated in said county, and showing, besides the other things
required, that it proposed to irrigate approximately 75,000 acres of
land.  This was accompanied by the map required by the statute show-
ing the route of the canal, from which it appeared that it would pass
through or touch numerous different tracts of land.

The lands of plaintiffs lay between the headgate of the canal on the

river and its other terminus, and defendant instituted and conducted to a successful termination condemnation proceedings to acquire the right of way over such lands for its canal. No question is made as to the regularity and sufficiency of such proceedings to invest defendant with the right it claims, if there was lawful authority for the condemnation. It is proper to state that the condemnation was sought and allowed only for the purpose of collecting and conveying water for irrigating agricultural lands.

In the trial of this cause in the District Court, it was made to appear that defendant's plant is capable of irrigating 60,000 acres of land in tracts belonging to twenty-six different owners. This land is rich and is capable of being made, by irrigation, to produce in good quantities corn, rice and most garden vegetables. Because of the irregularity and insufficiency of the rainfall, the only crop that has been grown was cotton, and that was never raised to any large extent, the principal industry of the section having been cattle raising. The value of the lands irrigated is very greatly increased thereby.

The attack made upon the condemnation proceedings is based upon the alleged absence of any sufficient authority in the statutes under which they were prosecuted. Prior to the passage of the Act of 1895, articles 642 and 704 of the Revised Statutes were in force. Subdivision 23 of the first named article authorized the formation of corporations for "the construction, maintenance and operation of dams, reservoirs, lakes, wells, canals, flumes, laterals and other necessary appurtenances for the purposes of irrigation, navigation, milling, mining, stockraising and city waterworks. Article 704 provided that: "Every canal corporation for the purpose of irrigation shall, in addition to the powers heretofore conferred, have power;" * * * "4. To furnish water for irrigation at such rates as such organization may, by its by-laws and regulations, prescribe. 6. To enter upon and condemn and appropriate any lands of any person or corporation that may be necessary for the uses and purposes of said company, the damages for any property thus appropriated to be assessed and paid for in the same manner as is provided by law in the case of railroads."

The Act of 1895 provides in its eleventh section that "corporations may be formed and chartered under the provisions of this act and of the general corporation laws, * * * for the purpose of constructing, maintaining and operating canals, ditches, flumes, feeders, laterals, reservoirs, dams, lakes and wells, and of conducting and transferring water to all persons entitled to the same for irrigation, mining, milling, to cities and towns for waterworks, and for stockraising and for the purpose of building storage reservoirs for the collection and storage of water for the uses before mentioned." Section 12 of that act provides that "All corporations and associations formed for the purpose of irrigation, mining, milling, the construction of waterworks for cities and towns, and stockraising, as provided in this act," shall have right of

way over public lands, and that such corporation or association of persons as well as cities and towns may obtain the right of way over private property and water belonging to riparian owners by condemnation as provided in the case of railroads.

1. The first contention of plaintiffs is that the defendant is not invested with the power of eminent domain either by this act or the previously existing law, because it is not the identical corporation to which the power is granted by those laws. The lack of identity is said to consist in the facts, that only canal corporations for the purpose of irrigation alone are the recipients of the power granted by article 704, while defendant is a canal corporation for that and several other purposes; and that only corporations formed for all of the purposes mentioned in the Act of 1895 and for none others are to receive the power granted by that act, while defendant is incorporated for only a part of the purposes so mentioned and for one purpose (navigation) not mentioned. It will be observed that all of the purposes to which defendant undertakes by its charter to apply the water which it is to control are within one or the other of the laws quoted. Those laws are by the provision of the twelfth section of the Act of 1895 connected together and made to constitute the body of the law upon the subject of the utilization of water for the promotion of the several industries of which they treat. Those industries, as specified in article 642 and in the Act of 1895, are the same except that the former includes navigation, which is omitted from the latter. The twelfth section of the latter, however, provides that corporations may be formed under it and the general corporation laws for the purpose of constructing the named works for the specified purposes, and we think there is found in this legislation itself a refutation of this contention.

The first section of the Act of 1895 authorizes the appropriation of water, declared to be public property, "for the uses and purposes hereinafter provided." The second section authorizes the storage and diversion of storm or rain waters for irrigation, mining, milling, waterworks, *or* stockraising. The latter part of the section connects together conjunctively these various industries to be promoted. The third section, with reference to the waters of streams, authorizes their use for irrigation, mining, milling, waterworks, *or* stockraising, and forbids the diversion of such water to the prejudice of riparian owners except "after condemnation thereof in the manner as hereinafter provided." The fourth section directly provides that the appropriation of water must be for irrigation, etc., *or* stockraising.

From these features of the statute, as well as from those pointed out in the opinion of the Court of Civil Appeals, it is evident that the *appropriation* of water by individuals, associations of persons, or corporations may be for any one of these purposes and need not be for all. This is further borne out by the sixth and eighth sections, which prescribe the statements and declarations which are to be filed by

"every person, corporation or association of persons." The only state-
ment to be made relating directly to any business to be affected is
with reference to irrigation, and the eighth section expressly authorizes
the appropriation of water by such statements for irrigation purposes
alone.    This being the authority for appropriation of water for the
various purposes, singly or together, should the mere fact that section
11, in authorizing the formation of corporations for the collection and
furnishing of water, mentions conjunctively the purposes for which it
may be furnished, be treated as a requirement that the corporation
shall by its charter assume the duty of furnishing for all the businesses?
We think not.    The provisions recited are sufficient to show the in-
congruity which such a construction of the eleventh section would intro-
duce between it and the others by requiring the corporation, the instru-
mentality for the appropriation and use of the water, to assume to take
it for all of the named purposes, when it is expressly permitted to take it
for only one of them.    Natural persons, treated throughout the act in
the same way as corporations, are not required, in appropriating water,
to use it for all purposes, nor forbidden to engage in any other business,
and it seems plain that the Legislature did not intend to require of
corporations an undertaking, without regard to the circumstances and
situation of the localities in which they were to appropriate and furnish
water, to supply it for all of the businesses for which the statute per-
mits it to be appropriated, when in such localities only some of the
businesses may be practicable.    With regard to the contention that the
introduction of "navigation" into defendant's charter as one of the
businesses in which water is to be used, there may be a question
whether or not section 4 of the Act of 1895 so far modifies article 642
as to forbid such use of water, a decision of which is not necessary.
If that use is still authorized, the charter may properly include it.
If it is unauthorized, this part of the charter is simply inoperative
and does not affect the defendant's other powers.    It has not sought to
condemn the land in question for any purpose save irrigation, and as its
charter is valid and permits it to engage in that business alone, no valid
objection arises.    When we thus reach the conclusion that defendant is a
corporation, formed as provided in the Act of 1895, it follows that the
twelfth section thereof grants to it the right of condemnation.

2.    The whole of the Act of 1895 is attacked as being in conflict
with section 35 of article 3 of the Constitution in that it expresses,
both in its title and body, more than one subject.    The title is as follows:

"An act to encourage irrigation and to provide for the acquisition
of the right to the use of water and for the construction and mainte-
nance of canals, ditches, flumes, dams, reservoirs and wells for irrigation,
and for mining, milling, the construction of waterworks for cities and
towns and stockraising."

We agree with the Court of Civil Appeals when it says: ("The one
general subject of legislation indicated by this caption is to provide a

method for the acquisition and a means for the conveyance of water for use in the several industries therein named. } There is no incongruity in the subjects expressed in the caption or in the body of the act. Neither the caption nor the body of the act deals with the several industries named therein in any respect except as to the method and means of supplying water for their use, which as before stated is the general subject expressed in the caption. State v. Bowers, 14 Ind., 195; Cooley's Const. Lim., 7 ed., 206." We see nothing even questionable in the fact that a statute, providing for the appropriation and use of water declared to be public property, defines the various uses to which it may be devoted. Taken literally, the twelfth section does seem to treat of the organization of corporations and associations for all of the businesses of irrigation, mining, milling, waterworks and stockraising, and not merely those formed for supplying water for carrying on those businesses, but a close examination of the language in connection with all of the other provisions makes it plain that this is due merely to lack of fulness of expression. The corporations and associations spoken of are those formed "as provided in this act," and the only corporations that may be formed as so provided are those authorized in the eleventh section, in connection with the general corporation law, for the purpose of obtaining and conveying water for use in the several businesses named. That is the one purpose pervading the act. The provision in the twelfth section in favor of cities and towns is incidental merely to the use of water for waterworks.

Another position taken is that the provision authorizing the acquisition of the right of way over land is not within the language of the title, but is excluded by that part of it which specifies the acquisition of the right to water. But the title mentions a number of things to be provided for by the bill as incidents of the general purpose, such as canals, ditches, etc., which must occupy land; and hence provision for the acquisition of sites for them follows as a natural if not a necessary incident.

3. It is next urged that the act is void because of the indefiniteness of the designation of the territory in which it is to operate, the supposed designation being of "those portions of the State of Texas in which by reason of the insufficient rainfall or by reason of the irregularity of the rainfall irrigation is beneficial for agricultural purposes." We do not understand that it was the purpose of the Legislature to designate any part of the State as a territory to which the act is to be restricted in its effect. It is to operate throughout the State wherever the conditions prescribed may exist. We do not know that this, of itself, invades any constitutional right of the citizens. The citizen's property can not be taken except for public use nor without compensation. The conditions under which this may be done must exist to justify a taking as for a public use, and, where they do exist, we do not see that the additional requirement that irrigation be beneficial to agriculture be-

cause of the insufficient rainfall prejudices the property owner. The extent to which the public may be interested in or benefited by an irrigation project may depend materially upon the very inquiry indicated by this clause of the statute; for the benefit to the public in the use of the water may, in given situations, be so inconsiderable as that the use for which the water and other property is proposed to be taken should not be regarded as a public use. So long as the citizen's property is not taken for uses not public in their nature, we do not see that he ha= any cause to complain of such a provision as that in question; and whether or not a given taking is for a public use can always be investigated in the courts, whatever may have been the action of the legislative department concerning it.

4. This brings us to the question upon which we have had most doubt and difficulty, that is: Is the purpose for which the law authorizes the taking of private property a public one? It is not contended that the acquisition of the right to the use of water by the public, or a portion thereof, for the purposes indicated in the statutes may not be a public use justifying the employment of the power of eminent domain. That it is, is established by many adjudications. The contention is that the laws in question do not secure any such use to the public, or to any part of it, but that they authorize the creation of purely private corporations and associations of persons for the carrying on of businesses wholly private, and attempt to empower them to take private property for use in such businesses, without being required to assume any duty to, or to respect any right in, the public. If this were true, we should feel constrained to sustain the attack upon those provisions granting the right of condemnation, for we are not inclined to accept that liberal definition of the phrase "public use" adopted by some authorities, which makes it mean no more than the public welfare or good, and under which almost any kind of extensive business which promotes the prosperity and comfort of the country might be aided by the power of eminent domain. With the Court of Civil Appeals and counsel for plaintiffs and those authorities which they follow, we agree that property is taken for public use as intended by the Constitution only when there results to the public some definite right or use in the business or undertaking to which the property is devoted. And we further agree that this public right or use should result from the law itself and not be dependent entirely upon the will of the donee of the power. In re Theresa Drainage District, 90 Wis., 301. Such, at least, we shall assume to be the principle governing this case.

We think it obvious, however, that if it can be gathered from all the provisions of a statute that the recipient of the power is charged with duties to the public, or that a right of use in that for which property is taken is secured to the public, the manner in which, or the form of expression by which, it is done, is immaterial to such an inquiry as this. We think it further true that the courts can not inquire into the

wisdom or expediency of the regulations adopted by the Legislature for the protection of the public, further than to see that a public use is secured. The question whether or not a public use springs from a law granting the right of eminent domain to a corporation is largely influenced by the character of the franchise granted to it and the business it is authorized to carry on. At the present day it would hardly be doubted that the mere acceptance of a franchise to build and operate a railway or a telegraph or telephone line, a turnpike or a ferry, coupled with the power of eminent domain, would involve the assumption of duties to the public. An irrigation company is not so plainly of a quasi public character as those instanced, since it may be engaged in a business either wholly private, or of a partly public character; and hence we must look into the law authorizing such an enterprise to see the nature of the rights and powers which are granted, on the one hand, and of the duties exacted, on the other, to determine its character, when, as here, that is not expressly declared by law. We find in the Act of 1895 grants of the right and power to appropriate the public waters of the State and to acquire by condemnation the private property of the citizen in both water and land. These are powers which do not properly belong to those engaged in purely private businesses. We next find that this is done for the purpose of enabling the takers to convey and transfer such water "to all persons entitled to the same" for specified purposes. From this it is evident that the business contemplated is the furnishing of water to others. Who the others "entitled" are and what they are entitled to, are questions not expressly answered by the statute, but, when it is found that the sites and route of the canal and other works are to be evidenced by a public record, the answer to the first question is easily found, and it embraces, in the language of the eleventh section, "all persons who own or hold a possessory right or title to land adjoining or contiguous to any canal," etc. What are the rights of those persons and the corresponding duties of the owner of the plant are very indefinitely defined, and at this point it is argued that the very regulations made confer such rights and powers on the corporation as to exclude the idea of any duty and to make the interest of others wholly dependent on its will. Full power and authority are given to make contracts for the sale of permanent water rights, and to lease, rent or otherwise dispose of the water controlled by such corporation for such time as may be agreed upon. The act next provides that "all persons who own or hold a possessory right or title to land adjoining or contiguous to any canal," etc., "and who shall have secured a right to the use of water shall be entitled to be supplied with water * * * in accordance with the terms of his or their contract," and that "in case of shortage of water from drought, etc., the water shall be divided among all consumers pro rata according to the amount he or they may be entitled." The sale of the permanent water right is made to constitute an easement to the land which is to

pass with the title to it, so that the owner of it shall be entitled to water upon the terms provided in his contract, "or, in case no contract is entered into, then at just and reasonable rates." Further provision is made in favor of persons otherwise entitled to water but who have been unable to agree upon a contract for a permanent water right, or for the use of rental of water, securing to them the right to water when the owner of the plant has or controls any not contracted to others.

(The power to contract, here given, to the owner of the plant can not, if the business is to be regarded as affected with a public interest, be recognized as absolute and uncontrolled.)( Common carriers and others engaged in public callings have the power to contract, but it can not be so employed as to absolve them from their duties to the public or to deprive others of their rights.) Rights are evidently secured by this statute to those so situated as to be able to avail themselves of the water provided for, and those rights it is the duty of the owners of the contemplated business to respect; and the power to contract, under the well recognized principles applicable to those charged with such duties, must be exercised in subordination to such duties and rights. ( Reasonable contracts are what this statute means and not contracts employed as evasions of duty.)

The provisions of article 704 for the making of regulations fixing rates applies to these corporations, subject to the control of the law, which says that such regulations must be reasonable. It is not entirely clear when all of the provisions of the Act of 1895 are considered whether those who do not make contracts are wholly postponed to those who do or not. If they are, with the qualification that the contracts must be made in good faith and be reasonable, we can not see in this anything to raise a constitutional question. The question as to the expediency of the regulations was for the Legislature. Furthermore, when the conclusion is reached that this is a business in which the use of the water is secured to the public in consideration of the franchises and priveleges granted, there results a power in the Legislature to further regulate it in a reasonable way.

Other indications that the business authorized is a quasi public one are found in the statute. The provisions requiring a record of the plan and map of the canals, etc., prescribing the time within which the work must be commenced and completed, giving the right of way over public lands, roads, and highways, requiring the removal, in certain instances, of public highways and bridges to give place for some of the works, the employment, in condemnation, of the same rules that apply in cases of railroads, all these tend to the same conclusion.

The fact that the same owner is allowed to furnish the water for so many different purposes may complicate the business in some instances, but this does not detract from its character as impressed with a public use. All such considerations were for the Legislature.

It is argued, in effect, that the broad terms of the statute would

allow the condemnation of private property to be used in the businesses specified when they are conducted wholly for the benefit of those prose-cuting them. The right to condemn private property is only given to corporations or associations formed to carry on the business contemplated by the statute, which we have seen is to be conducted for public benefit. The Constitution itself protects private property from any taking except for the public use, and the statute must be viewed as having been adopted in subordination to that provision and not in violation of it, unless the latter construction is required by the provisions of the act. The act itself manifests the purpose which we have shown, and the power it gives can not be employed to take private property for any purpose except the public one intended. Any citizen whose property is sought to be taken in aid of a given enterprise is to have a hearing, in which the question whether or not the use to which the property is to be devoted is a public one may be fully considered, and, if it be found that such is not the character of the use, the statute does not authorize and the Constitution forbids the taking.

Plaintiffs' presentation of this case does not embrace any claim that there is anything in the enterprise undertaken by defendant which makes it private or divests it of a public character, if the law under which it proceeded is sufficient to impress such a character upon the corporations authorized by it. We may say, however, that the facts of the case sufficiently show the existence of the conditions prescribed by the statute and a sufficiently extensive public use to sustain the proceedings under which defendant claims, or at least to make the question one of fact upon which this court can not review the decisions of other tribunals.

The judgments below will therefore be affirmed.

*Affirmed.*