FIRST NAT. BANK OF HOUSTON v. CAMPBELL et al. (No. 7293.)

(Court of Civil Appeals of Texas. Galveston. Feb. 9, 1917.)

1. ASSIGNMENTS &⚮13 — EARNINGS — POTENTIAL EXISTENCE.

Earnings under contracts not yet made having no potential existence, any attempt to assign or mortgage them was void.

[Ed. Note.—For other cases, see Assignments, Cent. Dig. § 21.]

2. PLEDGES &⚮11—NECESSITY OF DELIVERY.

Lien cannot be claimed under an agreement to pledge except as to articles thereafter actually delivered; delivery and possession being essential.

[Ed. Note.—For other cases, see Pledges, Cent. Dig. §§ 28–35.]

3. RECEIVERS &⚮158(2)—PREFERRED CLAIMS—IRRIGATION COMPANY.

A creditor furnishing current supplies to a quasi public service corporation, as an irrigation company, to keep it a going concern, is entitled to priority of payment therefor, over other unsecured creditors, out of funds in its receiver's hands, earned prior to the receivership.

[Ed. Note.—For other cases, see Receivers, Cent. Dig. § 303.]

Appeal from District Court, Harris County; Henry J. Dannenbaum, Judge.

The First National Bank of Houston intervened in receivership proceedings for the Cane & Rice Belt Irrigation Company, and from the judgment appeals adversely to Ben Campbell and others. Affirmed.

Kittrell & Kittrell, of Houston, for appellant. D. Edward Greer and H. L. Stone, Jr., both of Houston, for appellees.

PLEASANTS, C. J. This controversy is between interveners in a receivership proceeding pending in the district court of Harris county and arises upon the following state of facts:

The Cane & Rice Belt Irrigation Company, a corporation engaged in the business of irrigating rice lands, entered into a verbal contract with the appellant in January, 1913, by the terms of which appellant agreed to loan money to said irrigation company to be used in the operation of its plant during the sea-

son of said year 1913, and the irrigation company agreed to secure the appellant in the repayment of the loan by a pledge of the notes and contracts obtained by it from the persons to whom it should furnish water during said season. In pursuance of this contract the irrigation company placed in the hands of appellant as security for the money to be advanced it under said contract all of the notes obtained from its water customers. After these notes were given appellant, which was about the 1st of May, the appellant began making advances to said company of the money required for the operation of its plant, and during the season of 1913 the advances so made, together with interest thereon and attorney's fees, amounted to the sum of $34,750. Before any part of the money advanced by appellant under said contract was repaid to it, the irrigation company became insolvent, and on January 2, 1914, was placed in the hands of a receiver.

After his appointment the receiver collected $3,739.07 on some of the notes that had been pledged to appellant, and also collected the sum of $5,084 from persons to whom the irrigation company had furnished water during the season of 1913 under a verbal or written contract, but from whom it had failed to obtain notes.

The appellant filed a petition in intervention in the receivership proceeding and asked to recover judgment for the amount due it as above stated and to have its lien established and foreclosed upon the notes which had been pledged it as aforesaid, and also upon the $5,084 which the receiver had collected for water furnished by the irrigation company during the season of 1913, but for which no notes had been taken, as before stated. The allegations of appellant's petition in regard to the lien claimed by it are as follows:

"That by reason of the contract of deposit said notes above described as collateral security and the agreement that all rent contracts entered into by the Cane & Rice Belt Irrigation Company should be collateral security for the loan so made, there was thereupon fixed upon said notes and upon all other amounts received for water rent a lien in favor of this intervener, and your intervener thereby became entitled to collect any and all moneys that might be paid thereon until such time as such $27,500 so due by the Cane & Rice Belt Irrigation Company to your intervener is paid, and to a foreclosure of its lien upon said notes and contracts."

The Gulf Pipe Line Company also intervened in the receivership proceeding, setting up a claim for the sum of $17,682.24, the contract price of fuel oil furnished by it to the irrigation company to enable it to operate its pumping plant during the months of July, August, and September, 1913, and claiming a lien upon the $5,084 above mentioned.

The claims of both interveners were referred to a master in chancery. After a hearing the master reported that in his opinion the First National Bank had a lien on all the collateral notes in its possession, and also upon the $2,739.07 collected by the receiver from the makers of said notes, but further holding that said First National Bank did not have a lien upon the $5,084, and also held that the Gulf Pipe Line Company did not have a lien on any of the income from water rent for the year 1913.

Proper exceptions were filed by all parties to the master's report, and the court upon hearing, on the 11th day of November, 1915, entered judgment for the First National Bank for the sum of $27,500, together with interest and attorney's fees thereon, aggregating the sum of $34,750, and also entered judgment for the Gulf Pipe Line Company for $17,682.24, and further adjudged that the First National Bank had a lien upon all of the notes deposited with it as collateral and upon the $2,739.07 collected from the makers of said notes, and ordering a sale of said notes in satisfaction of said judgment, or they could be taken at their face value as a credit on the judgment. It further adjudged that the Gulf Pipe Line Company had a lien upon said $5,084, and ordered the receiver to pay the same to said Gulf Pipe Line Company to be credited upon its judgment. From this judgment the intervener bank alone prosecutes this appeal.

Appellant's first assignment of error assails the judgment on the ground that the evidence established the lien claimed by appellant upon the $5,084 collected by the receiver for water rents due the irrigation company for the season of 1913, and the court should have so adjudged. The proposition submitted under this assignment is as follows:

"The claims against the tenants, who while using the land [water] had not made any contracts in writing or given any notes, are such claims as carried an actual lien, and were susceptible of being assigned as collateral security, because they were 'choses in action,' and had a 'potential' existence in the meaning of the law, in that they were capable of being reduced to possession with enforcement of the lien; and the right of the company to assign them was in no wise limited or lessened by the fact that they had no tangible physical existence; the contract between the company and the appealing intervener being essentially an assignment, and in no sense a pledge."

[1] We do not think the assignment should be sustained. The evidence does not show that appellant acquired any lien upon any water rents due the irrigation company except such as were evidenced by notes or contracts which were delivered to it by the irrigation company in pledge or as collateral security to secure the money advanced by it. No part of the $5,084 was evidenced by notes, and if any part of said sum was earned under a written contract, such contract was never delivered to appellant as a pledge or as collateral security. The contract between appellant and the irrigation company was made in January or February, 1913, and it is not shown that at that time the irrigation company had any contract with any person to furnish water for irrigating purposes for the

season of 1913. If the contracts under which the $5,084 was earned by the irrigation company were not in existence at the time the agreement between appellant and the irrigation company was made, said earnings had no potential existence, and any attempt to assign or mortgage such earnings was void. 5 Corpus Juris, p. 871, § 41; Campbell v. Grant, 36 Tex. Civ. App. 641, 82 S. W. 795.

[2] The evidence as to the oral contract under which appellant claims a lien upon the $5,084 only shows an executory agreement to pledge as collateral security the notes and written contracts for supplying water that might be obtained by the irrigation company during the season of 1913, and no lien was acquired by the bank until the notes or contracts were obtained and delivered to it as security. The bank so understood the contract. Mr. Scott, the officer of the bank who made the agreement with the irrigation company, testified:

"We made arrangements to advance money to the Cane & Rice Belt Irrigation Company for the year 1913, as we had for three or four years previously. We did so early in the year. The contract was made in January or February. The contract was verbal. They were to pledge with us as soon as secured all their tenant notes or contracts. It was understood between us that all notes received by them from their tenants should be pledged to us as security against our loan. The notes taken were actually turned over to us, but the contracts were not. There were some contracts with some tenants that were not even reduced to writing, and those were pledged to us as well as the notes themselves. We advanced the money on the faith of the agreement as to pledging of all of the collateral notes. We advanced on the faith of getting all the notes and all the contracts, but late in the year there were several that notes had not been secured from, nor contracts."

He further testified that he did not advance any money to the irrigation company until it had obtained and delivered to the bank the notes which it had agreed to pledge. He seems to have known that until the notes were delivered to the bank it had no security.

"Under both the civil and the common law it is necessary to the validity of a pledge that possession of the pledged property be delivered to the pledgee, or to some one for him. Delivery of the thing is not a consequence, but the very essence, of the contract." "Pledges," 31 Cyc. 799, 800.

Delivery and possession is essential. See note 4 L. R. A. 306; also Simpkins on Contracts and Sales (3d Ed.) bottom of page 811 and top of page 812, and authorities cited. In Jones on Pledges and Collateral Securities, § 30, p. 37, it is said:

"Obviously a pledge of future property is not effectual until the property comes into existence and is delivered to the pledgee. As to such property there can only be an agreement to pledge it, because there can be no delivery to make the pledge effectual."

We think the authorities cited are conclusive against appellant's contention that it has a lien on the $5,084 water rents collected by the receiver for which neither note or contract had been obtained by the irrigation company and delivered to appellant.

[3] The second and third assignments complain of that portion of the judgment establishing a lien in favor of the Gulf Pipe Line Company upon the $5,084.

It is a well-settled rule of equity that a creditor who furnishes current supplies to a quasi public or public service corporation to keep it a going concern is entitled to priority of payment for such supplies out of funds in the hands of a receiver of such company, earned prior to the receivership, over other unsecured creditors. McIlhenny v. Binz, 80 Tex. 16, 13 S. W. 655, 26 Am. St. Rep. 705; Bank v. Waco Electric Ry., 36 S. W. 136; Ellis v. Ice, etc., Co., 86 Tex. 109, 23 S. W. 858; Homer v. Baltimore Refrigerating Heating Co., 117 Md. 411, 84 Atl. 181; Atlantic Trust Co. v. Canal & Irrigation Co. (C. C.) 79 Fed. 39.

The Cane & Rice Belt Irrigation Company was organized and chartered under the laws of this state, and our courts have settled the status of such companies as quasi public in character and standing upon the same footing as railroads. Borden v. Rice Irrigation Co., 98 Tex. 494, 86 S. W. 11, 107 Am. St. Rep. 640; Raywood Rice Canal & Milling Co. v. Erp, 105 Tex. 161, 146 S. W. 158; Colorado Canal Co. v. McFarland, 94 S. W. 404.

The evidence shows that the amount due the Pipe Line Company was for fuel oil furnished by it to the irrigation company during the months of July, August, and September, 1913. But for this supply of fuel furnished by appellee Pipe Line Company the irrigation company could not have continued as a going concern during said season, that portion of the public which it served would have greatly suffered, and the $5,084 in controversy would not have been earned. The evidence further shows that the oil was furnished under the express understanding and agreement that it would be paid for out of the season's earnings of the irrigation company.

Upon these facts we think the judgment of the trial court giving the appellee Pipe Line Company a lien upon the $5,084 earnings of the irrigation company is in accordance with the principles and rules of equity.

It follows from the conclusions above stated that the judgment of the court below should be affirmed; and it has been so ordered.

Affirmed.