JOHN MANGAN v. TEXAS TRANSPORTATION COMPANY.

Delivered March 9, 1898.

Street Railway—Injunction.

A corporation duly organized will not be restrained from the construction and operation of a freight railway at the suit of an abutting property owner upon the street where the road will pass, on the ground that the highway is to be appropriated to a private use in that the road will be maintained for the benefit of two breweries, when the corporate franchise and charter contemplate a public use and the transportation of freight for all applicants, although the breweries may be more benefited than the balance of the public.

APPEAL from Bexar. Tried below before Hon. J. L. CAMP.

*W. W. King,* for appellant.

*Upson, Bergstrom & Newton,* for appellees.

NEILL, ASSOCIATE JUSTICE.—The nature and purpose of this suit may be seen from plaintiff's petition, which substantially alleges: That the defendant, the Texas Transportation Company, is duly incorpo-

rated under the laws of the State of Texas; that the stockholders, officers, and agents of the San Antonio Brewing Association and the Lone Star Brewing Association procured from the State of Texas the charter of the defendant company, issued by the Secretary of the State of Texas on the 27th day of September, 1897, authorizing it to build, maintain, and operate a freight street railway for the transportation of freight in the city of San Antonio over the streets of said city, and the said stockholders, officers, and agents of the said two brewing associations combined and confederated together to procure the passage of an ordinance by the city of San Antonio, authorizing the said defendant, the Texas Transportation Company, to construct and operate a line of street railway for the carriage of freight, commencing at a point on the east side of Walnut Street opposite its junction with Austin Street; thence west along Austin Street to Grand Avenue; thence along Grand Avenue to River Avenue; thence up River Avenue to a point opposite the City Brewery between Grayson and James Streets; thence across River Avenue to private property; thence across Avenue A; also from the intersection of Grand Avenue and River Avenues; thence west along Grand Avenue to the San Antonio River; thence across said river on trestle to be constructed by the Texas Transportation Company on the south side of the bridge across the river at this point; thence along Jones Street to Dallas Street; that such line shall be operated as an entirety; that the same should be a public institution for the carriage of freight for the public at large, and the operators of said line should, in respect to the operation thereof, be common carriers of freight for hire and subject to the laws of the State of Texas and the control of the Texas Railway Commission, reserving in the city the right of exclusive control over such streets, the right to direct and control the location, construction, and use of such railway tracks, and that the same should be used by the grantee for the transportation of its cars and motors, propelled by electricity only, and be operated at such times and at such hours as may be fixed from time to time by the city council; and provides further, that the said company shall pay the city $500 per annum for the privilege of using such franchise; that the plant of the Lone Star Brewing Company is situated on the north side of Grand Avenue on the west bank of the San Antonio River; that the plant of the San Antonio Brewing Association is situated on the east bank of the San Antonio River and west of River Avenue; that the Galveston, Harrisburg & San Antonio Railway Company, a private corporation engaged in operating a line of railway as a common carrier, at the date of the passage of said ordinance, and at this date, is operating a railway through the city of San Antonio and has a freight depot at the junction of Austin and Walnut Streets and Grand Avenue; that said depot is located about 2288 feet from the plant of the Lone Star Brewing Company, and about 5000 feet from the plant of the San Antonio Brewing Association; that the greater part of the product of said brewing companies is shipped by rail to points all over the State of Texas

over the line of said railway and its connecting carriers; that at present they are compelled to haul their product by private conveyances; that while such ordinance is in the name of the Texas Transportation Company, it was in truth and in fact passed and granted for the sole use and benefit of said two brewing associations, which will be of no use or benefit to the public; that the incorporation of the said defendant company was a device to conceal the true and real object and purpose of the grant; that the maintenance and operation of said railway, authorized and permitted by said ordinance, will be an exclusive private use of public streets and highways, whereby the public will be deprived of the use of the streets mentioned in said ordinance as public thoroughfares, by rendering the same unfit and unsafe for pedestrians to use, or for traffic generally, and the said use by the said defendant company will inure to the exclusive benefit of the said two brewing associations, and will absolutely deprive the plaintiff of the use and enjoyment of his property, and the public of the use and enjoyment of said streets and thoroughfares; that if defendant company is permitted to build and operate a freight railway, under and by virtue of said franchise, the same will be an appropriation of public streets and thoroughfares to a private use. Plaintiff is advised, and so charges the fact to be, that the mayor and the city council of the city of San Antonio in the enactment of said ordinance exceeded their authority in thus granting to a private use the public streets and thoroughfares, and that the ordinance so enacted is null and void, and by appropriate averments shows that appellant is the owner of the property abutting on the street where said road is to be operated, and that the same will be damaged in the sum of $2000, and concludes with an appropriate prayer for relief, by injunction, against the construction and operation of said road.

To this petition defendant interposed the following exceptions:

"1. That plaintiff's petition fails to state facts sufficient to constitute a cause of action, or to authorize the issuance of a writ of injunction.

"2. It appears from plaintiff's petition that the defendant is duly incorporated under and by virtue of the laws of the State of Texas, with power and authority to construct, maintain, and operate upon the streets of the city of San Antonio a freight street railway for the carriage of freight for the public generally, and that in accordance with such charter the city of San Antonio has granted the said corporation a franchise to construct and operate such line in the manner set out in plaintiff's petition, and that said defendant corporation is obliged to carry freight for the public generally at such rates as may be fixed by the Railroad Commission; that the same constitutes a public corporation to carry on the business of a common carrier for the public generally, and no facts are stated in plaintiff's petition that the operation of said line of railway will be absolutely private.

"3. Because it appears from plaintiff's petition that the purpose of the organization of the defendant company and its purpose to carry freight generally is a lawful one, and no combination, conspiracy, or intent on the part of defendants can make it otherwise, and no facts are stated empowering the plaintiff therein to attack the said charter and franchise collaterally.

"It appears from the plaintiff's petition, that if plaintiff's property is damaged by reason of the construction and operation of a line of freight street railway as by plaintiff complained of, that he has a complete and adequate remedy at law in the recovery of damages in an action of law, and that he is not entitled to any equitable relief by injunction.

"Wherefore the defendant shows that the plaintiff herein is not entitled to maintain this action against these defendants, and defendant prays the judgment of the court of the sufficiency of these exceptions."

The foregoing exceptions were presented to the court and all of them sustained, and the plaintiff declining to further amend, judgment was entered for defendant dismissing this suit. From this judgment plaintiff prosecutes this appeal.

The errors assigned are to the court's action in sustaining the exceptions. These assignments will all be considered together.

Subdivision 54 of article 642, Revised Statutes, as amended by the Twenty-fifth Legislature (p. 192), authorizes the formation of private corporations "to build, maintain and operate a line of railroad to mines, gins, quarries, manufacturing plants, breweries, and mills, and to condemn land necessary for the right of way for such road, from and between such mine, gin, quarry, manufacturing plant, or mill, and the nearest line of railroad. But no corporation created under the provisions of this section shall have the power to condemn private property until said corporation shall declare itself a public highway and common carrier, thus placing said road under the control of the Railroad Commission of this State."

The charter of the city of San Antonio in force at the time appellee was incorporated, governing the construction and operation of railways in said city, confers upon the city council the following powers:

"Sec. 99. To direct and control the laying and construction of railroad tracks, turnouts, and switches, or prohibit the same in the streets, avenues, and alleys, and location of depot grounds within the city; to require all railroad tracks, turnouts, and switches shall be so constructed as not to interfere with the ordinary travel and use of the streets, avenues, and alleys, and that sufficient space shall be left on either side of said tracks for the safe and convenient passage of teams, carriages, and vehicles and persons; to require railroad companies to keep in repair the streets, avenues, and alleys through which their track may run, and if ordered by the city council, to light the same, and to construct and keep in repair suitable crossings at the intersection of

streets, avenues, alleys and ditches, sewers and culverts, when the city council shall deem necessary to direct the use and regulate the speed of locomotive engines within said city, and prevent or prohibit the use or running of the same within the city.

"Sec. 100. Exclusively to prevent, control, and regulate everything connected with city railroads, and to make such rules and regulations for the same as the city council may deem necessary."

Though the charter of the Texas Transportation Company is not set out in appellant's petition, it was presumably granted by virtue of the act of the Legislature above quoted.

The franchise obtained from the city of San Antonio to operate a line of railroad upon the streets of the city, was expressly granted for a public use, and its acceptance by the appellee was necessarily for the use expressed in the grant. There is an absence in appellant's petition of an averment that appellee had "declared itself a public highway and common carrier." But as its acceptance of the franchise from the city necessarily made it such a highway and carrier, it will not be presumed from the absence of such allegation that it had not so declared itself. The appellee having been chartered under an act of the Legislature and obtained from the city the right to construct and operate its road over its streets for a public use, it is to be presumed that the charter and franchise were granted and accepted for such use. And it was incumbent upon the appellant to specifically allege in his petition, by which he sought to restrain the appellee from exercising a right granted by the proper authorities, such facts as would overcome such presumption and show that the use to which appellee intended to put the streets of the city was private and not public. The owners of property abutting streets over which a railway company has from proper authorities obtained a charter and franchise to construct and operate over such streets its railroad for the use of the public, can not, by merely alleging that the only purpose and intent of the company in the construction and operation of such road is for the sole and private use of particular persons or corporations, enjoin the construction and operation of such road. The allegation that it is solely for a private use is merely a conclusion of the pleader. The facts which would negative the public use for which the charter and franchise was granted, and clearly show the use intended is private, should be specifically averred before a company can be prohibited by law from exercising the rights granted it by the proper authorities.

"Of the necessity or expediency of exercising the right of eminent domain in the appropriation of private property to public uses or the corporate body or tribunal upon which it has conferred the power to determine the question, is conclusive upon the courts, since such a question is essentially political in its nature and not judicial. But the question *whether the specific use is a public use or purpose*, or of such use or purpose as will justify the compulsory taking of private property, is perhaps ultimately a judicial one, and if so, the courts can not be abso-

lutely concluded by the action or opinion of the legislative department. But if the Legislature has declared the use to be a public one, its judgment will be respected by the courts, unless the use be palpably private, or the necessity for the taking plainly without reasonable foundation. But if the use be public, or if it be so doubtful that the courts can not pronounce it to be such as to justify the compulsory taking of private property, the decision of the Legislature in the enactment giving the power, that a necessity exists to take the property, is final and conclusive." 2 Dill. Mun. Corp., 4 ed., sec. 600.

The authority conferred by the Legislature upon companies to incorporate for the purpose of building, maintaining, and operating a line of railroad to breweries, from and between such breweries and the nearest railroad, and empowering such companies to condemn land necessary for the right of way for such road, shows that the Legislature regarded such a railroad a public use, else such authority and power would have never been granted. The petition of appellant shows that appellee's railroad was chartered under this act, and that it is about to construct and operate its road, under a grant of the common council of the city of San Antonio, over and along certain streets of said city from and between certain breweries and the nearest line of railroad thereto. If then it be doubtful that the courts can not pronounce it to be such use as to justify the compulsory taking of private property, the decision of the Legislature in the enactment of the power, that it is for a public use, is final.

An essential feature of a public use is that the public may enjoy its benefits, and, if it be an undertaking for the performance of services, command the services. Randolph on Em. Dom., sec. 56; Mills on Em. Dom., sec. 14. It appears from the allegations in appellant's petition that the public has an equal right with the two breweries mentioned in the petition to enjoy the benefits of appellee's proposed road and command its services. It may be true that the breweries may be more benefited than the balance of the public, and that but few persons may in fact actually enjoy its benefits; but if the use is public in point of law, this can make no difference. Phillips v. Watson, 63 Iowa, 28; Railway v. Railway, 32 N. J. Eq., 755; De Camp v. Railway, 47 N. J. L., 43; Railway v. Porter, 43 Minn., 527; Ross v. Davis, 97 Ind., 79; Irrigation Co. v. Mehrtens, 97 Cal., 676; Waterworks v. Bird, 130 N. Y., 249; Talbot v. Hudson, 16 Gray, 417.

It is said by Thompson on Corporations (volume 4, section 56) that "Public railways, although owned by private corporations * * *, or subject to the public use only on the payment of fares or freights, including lateral or terminal railways, or sidetracks, laid on the streets of a city to connect public railways with each other or with public or private warehouses, or with malt houses, manufacturing establishments, or public wharves and landings, though judicial opinion on the question is not uniform, are public uses for which private property may be condemned." And in Lewis on Eminent Domain, section 171, it is said

that there is no reason why lateral roads should not be constructed, if they are required to serve the public, as occasion requires.

In several States whose statutes, like ours, authorize the construction of roads to mines and manufacturing establishments, such statutes have been upheld upon the ground that the roads when constructed were charged with the duties of common carriers of all freight and passengers offered for transportation, and were therefore public highways. Coal Co. v. Coal Co., 37 Md., 537; Deitrich v. Murdock, 42 Mo., 279; Railway v. Railway, 44 Am. and Eng. Ry. Cases, 10; Ducamp v. Railway, 47 N. J. L., 43.

The inquiry in a case like the one under consideration must necessarily be, what are the objects to be accomplished? If the answer reached is that they are such as constitute a public use, then the question must be solved in favor of the company which has been granted the use of streets for such purposes. The public use required need not be the use or benefit of the whole public or State, or any large portion of it. It may be for the inhabitants of a small or restricted locality, but the use or benefit must be common, not to particular individuals or estates. Ward v. Railway, 119 Ill., 287. If the use of so much benefit or advantage to the community, either directly or indirectly, that it can not be said to be wholly private in its effect and operation, it must then be deemed public. 1 Wood Ry. Law, sec. 226.

When the franchise is in its nature public, as the transportation of freight, and the object to be promoted is one that concerns the public interests, the court, in determining whether the improvement is such a public use as that the right of condemnation shall extend to it, will not scan closely the number of individuals profited by it. Ducamp v. Railway, supra.

The petition in this case shows that every member of the public having occasion to transport freight over appellee's proposed road may use the road for that purpose, and of right may require the company to serve him in that respect. This is the test which determines whether the use is public. The motive of personal gain which may have influenced the projectors in undertaking to construct and operate the road can not take from it its public character.

There being no specific allegations in appellant's petition showing that the use which appellee proposes to make of a part of the street upon which his property abuts is private and not public, as is clearly inferable from its charter and franchise, the court, in our opinion, did not err in sustaining the exceptions to the petition, and dismissing the suit. Appellee's road not having been constructed, appellant's claim for damages has not accrued.

*Affirmed.*

Writ of error refused.