**WEST et al. v. WHITEHEAD et al.***
**(No. 6663.)**

(Court of Civil Appeals of Texas. San Antonio. Feb. 15, 1922. Rehearing Denied March 1, 1922.)

**1. Eminent domain ⬅⇒293(1) — Allegations questioning good faith of incorporators of railroad disregarded in suit to enjoin condemnation of land.**

In proceedings to restrain railroad from condemning land because the railroad intended to devote its line to purely private purposes, allegations questioning the good faith or the intention of the incorporators of the railroad, with reference to the proposed method and purposes to be pursued in the operation of the road, should be disregarded; it being presumed that in carrying out its objects and purposes the corporation will comply with the laws of the state.

**2. Eminent domain ⬅⇒20(5)—Statute authorizing corporation organized to construct line from mine to other railroad to condemn land held not unconstitutional.**

Rev. St. art. 1121, subd. 54, providing for the formation of private corporations to build railroads between mines, mills, etc., and the nearest line of railroad, to be placed under the control of the Railroad Commission, and to condemn land therefor, held not unconstitutional, as authorizing the taking of private property for a private use, such road being open to the uniform use of the public, even though it will be chiefly of service in bringing out the products of a particular mine, and even though stockholders of the railroad are also interested in operating the mine.

**3. Eminent domain ⬅⇒67—Necessity and expediency of exercising power legislative and not judicial questions.**

Where the use for which property sought to be taken under the power of eminent domain is public, the necessity and expediency of exercising the power, and the extent to which the property thereunder is to be taken, are political or legislative, and not judicial questions, the legislative determination of which is conclusive, and not reviewable by the courts.

**4. Eminent domain ⬅⇒66—Whether use for which private property is taken is a public use is a judicial question.**

The question of whether the use for which private property is taken is a public use is a judicial question, to be determined in the courts, though where the Legislature declares a particular use to be a public use the presumption is in favor of the declaration, and will be binding upon the courts, unless such use is clearly and palpably of a private character.

**5. Eminent domain ⬅⇒14—Whether a use is a public use depends upon the character and not the extent of such use.**

The question of whether the use for which private property is taken is a public one depends upon the character, and not the extent, of such use, and it is immaterial if the use is limited to the citizens of a local neighborhood, or if the number of citizens likely to avail themselves thereof is inconsiderable, so long as it is open to all who choose to avail themselves of it.

**6. Eminent domain ⬅⇒20(5)—Eight mile long railroad from mine to station on other railroad line held devoted to a "public use."**

An eight mile long railroad, extending from a rock asphalt mine to a station on the line of a general railroad, held devoted to a "public use" for condemnation purposes.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Public Use.]

**7. Eminent domain ⬅⇒10(1)—Railroad incorporated to operate line from mines to station on other railroad may condemn land under statutes providing for condemnation by railroads generally.**

A railroad organized under Rev. St. art. 1121, subd. 54, providing for the formation of corporations to construct and operate railroad lines between mines, mills, etc., and stations on other lines, and to condemn land therefor, may adopt method of condemnation, provided in article 6481 et seq., relating to "any railroad corporation."

Appeal from District Court, Kinney County; Joseph Jones, Judge.

Suit by W. E. Whitehead and others against W. Fred West and others. From order granting a temporary injunction, defendants appeal. Reversed and rendered.

Boyle, Ezell & Grover and Taliaferro, Cunningham & Moursund, all of San Antonio, for appellants.

Martin & Martin and G. B. Fenley, all of Uvalde, and Sonfield, Nall & King, of Beaumont, for appellees.

SMITH, J. The Kinney & Uvalde Railway Company was chartered under subdivision 54 of article 1121 of the Revised Statutes, providing for the formation of private corporations in this state. The provision in question reads as follows:

"To build, maintain and operate a line of railroad to mines, gins, quarries, manufacturing plants, breweries and mills, and to condemn land necessary for the right of way for such road, from and between such mine, gin, quarry, manufacturing plant or mill, and the nearest line of railroad; but no corporation created under the provisions of this subdivision shall have the power to condemn private property until said corporation shall declare itself a public highway and common carrier, thus placing said road under the control of the railroad commission of this state."

In pursuance of the power of eminent domain given it in this act, the railway company instituted proceedings, under the general railroad condemnation statutes, to condemn for its use a right of way across tracts of land owned by W. E. Whitehead and another. W. Fred West and two others were

appointed as commissioners to assess damages for the proposed use of the land, when Whitehead procured a temporary injunction restraining the commissioners from proceeding under their appointment, and the railway company from taking possession of the land over which the right of way was sought. This appeal is from that order. The injunction was granted, after notice, upon the verified pleadings of the parties, without hearing any evidence. Generally speaking, the only questions presented are: First, the constitutionality of the act quoted, in so far as it seeks to extend the power of eminent domain to corporations organized thereunder; and, second, whether or not, in the absence of an express provision in that act for that purpose, such corporation may resort to the method of procedure provided in any other statute in exercising the right of eminent domain.

The pleadings contain a great many allegations which in our opinion are immaterial to the questions raised, and which will not be noticed here. In general terms it may be said that the plaintiffs below base their objections to the operation of the act in question upon allegations that the railway company here involved purposes to run its line across an undeveloped section of the country, suitable only for pasturage purposes, and was organized solely for the purpose of transporting the product of an asphalt mine located at the terminus of the company's railway, and not for any public use; that it does not intend to comply with the law of the state governing common carriers; and that its financial resources are not sufficient to enable it to equip itself for general railroad purposes, or to pay the damages appellees may suffer as a result of the condemnation of their land. In short, it is contended that the company is organized solely for private purposes, and intends to devote its line of railway to purely private uses, and accordingly is not entitled to the right to exercise the power of eminent domain sought to be granted to it in the act in question.

It appears from the pleadings upon which the injunction was granted that the proposed line of railway is about eight miles long, extending from Cline, in Uvalde county, a station on the line of a general railroad, to a rock asphalt mine in operation in that county. It is conceded that the condemnation proceedings interrupted by the injunction were regular, and that that section of the statute under consideration is valid for all purposes, unless it is invalid in the provision extending to the corporations therein provided for the right to exercise the power of eminent domain, and that provision is attacked upon the one ground that it authorizes the taking of private property for a private, as distinguished from a public, use. The first question presented here, then, is whether or not under the facts disclosed in the pleadings the

operation of the line of railway involved constitutes a private, and not a public, use.

[1] We think it should be said at the outset that all allegations questioning the good faith or the intention of the incorporators of the railway company, with reference to the proposed method and purposes to be pursued in the operation of the road, should be disregarded. It must be presumed that in carrying out its objects and purposes the corporation will comply with the laws of the state. If the corporation has other intentions, or if it undertakes to evade the law, both the state and the citizens thereof are afforded adequate remedies by which obedience to the law may be enforced.

Declaring itself a public highway and common carrier, and expressly subjecting itself to the control of the State Railroad Commission, the company involved was chartered for the purpose of building, maintaining, and operating a line of railroad between the asphalt mine and Cline, a distance of eight miles. Under this charter the company is authorized, and under the law it is required, to accept, transport, and deliver to any point on its line, or to its connecting carrier, all commodities tendered it for such purpose by the public. It must furnish cars and other facilities, load, unload, and reload, receive, transport, and deliver, these commodities in accordance with such rules and regulations as the Railroad Commission may lawfully prescribe, and collect such charges for this service as that Commission may fix. Theoretically, then, the company's proposed operations constitute an ideal public use. But it is urged that as a practical matter the operation of the road will, after all, serve only a purely private use, in support of which contention appellees set out facts showing the short length of the road, the undeveloped character of the territory it traverses, and the assumed intention of the company to disregard its obligations under the law to serve the public, and perform no other function than to transport over its line the products of one particular asphalt mine, which is located at its terminus.

[2] Of course it is true that the Legislature has no power to enlarge the right of eminent domain so as to authorize the taking thereunder of private property for other than public uses. It is presumed that the Legislature has this limitation in view when it enacts statutes extending such rights, and frames its acts in subordination to, rather than in violation of, the limitation, unless, indeed the infringement is apparent from the expressed purpose or obvious effect of the act. Borden v. Trespalacios Co., 98 Tex. 494, 86 S. W. 11, 107 Am. St. Rep. 640. Here the act in question provides for the incorporation of a railroad company, a public highway, and common carrier, subject to the same regulation by the state as are other corporations of that character, which are

given the no longer questioned right of eminent domain. The purposes manifested by the terms of the act establish, conclusively, as we will show, a public use, to which end the private property of the citizen may be taken, if the citizen is compensated therefor in the manner provided by law.

[3] It seems to be a settled rule that where the use for which property is sought to be taken under the power of eminent domain is public, the necessity and expediency of exercising the power, and the extent to which the property thereunder is to be taken, are political or legislative, and not judicial, questions, the legislative determination of which is conclusive, and not reviewable, by the courts. Those questions rest wholly within the legislative discretion. 2 Elliott, R. R. § 952; Lewis, Em. Domain, § 255; 20 C. J. 624; 10 R. C. L. §§ 158, 159; Croley v. Railway (Tex. Civ. App.) 56 S. W. 615; Railway v. Malone (Tex. Civ. App.) 190 S. W. 809.

[4] It is equally well settled that the question of whether the use for which private property is taken is a public use is a judicial question, to be determined in the courts, although where the Legislature declares a particular use to be a public use the presumption is in favor of this declaration, and will be binding upon the courts unless such use is clearly and palpably of a private character. Elliott, R. R. § 952; 1 Lewis, Em. Dom. § 251; 20 C. J. 551; Mangan v. Transp. Co., 18 Tex. Civ. App. 478, 44 S. W. 998.

[5] The question of whether or not in a given case the use is a public one depends upon the character, and not the extent,. of such use. It depends upon the extent of the right the public has to such use, and not upon the extent to which the public may exercise that right. It is immaterial if the use is limited to the citizens of a local neighborhood, or that the number of citizens likely to avail themselves of it is inconsiderable, so long as it is open to all who choose to avail themselves of it. The mere fact that the advantage of the use inures to a particular individual or enterprise, or group thereof, will not deprive it of its public character. Nor does the public use, if a railroad, depend upon its length, nor whether it is only a branch road, nor that its equipment is to be furnished by another corporation, nor that its stockholders are also stockholders in a corporation which will be primarily benefited by its construction. If a railroad invoking the power of eminent domain is to be a highway, or a common carrier, and open to the promiscuous and uniform use of the public, such facts conclusively make it a public use, and the extent of the public need and probable use thereof is not a question for the courts, and may not be inquired into; and the right to take property "will not be denied a railroad corporation having proper authority from the Legislature, merely because it is to run through a sparsely settled country, or because it will be chiefly of service in bringing out the products of a particular mine, even if the stockholders of the railroad are also interested in the business which its construction will especially benefit." These principles are well settled, and have often been declared by the text-writers and in the decisions of the principal states, including this state. Elliott, R. R. §§ 961, 962; 20 C. J. pp. 558, 565; 10 R. C. L. p. 43; Lewis, Em. Dom. §§ 254, 263, 264, 313; Madera v. Granite Co., 3 Cal. App. 668, 87 Pac. 27; Kansas & T. Coal Ry. v. Coal Co., 161 Mo. 288, 61 S. W. 684, 51 L. R. A. 936, 84 Am. St. Rep. 717; Butte, A. & P. Ry. Co. v. Montana U. Ry. Co., 16 Mont. 504, 41 Pac. 232, 31 L. R. A. 298, 50 Am. St. Rep. 508; Phillips v. Watson, 63 Iowa, 28, 18 N. W. 659; Caretta v. Pocahontas Co., 62 W. Va. 185, 57 S. E. 401; State v. Court, 42 Wash. 675, 85 Pac. 669; Coal Co. v. Railway, 97 Ark. 495, 134 S. W. 634, Ann. Cas. 1912D, 1000; Railway v. Ferris, 26 Tex. 588; Borden v. Irrigation Co., 98 Tex. 494, 86 S. W. 11, 107 Am. St. Rep. 640; Chapman v. Railway (Tex. Civ. App.) 138 S. W. 440; Mangan v. Transp. Co., 18 Tex. Civ. App. 478, 44 S. W. 998.

The policy evidenced by these rules has been evolved out of long years of development and progress in this country. The results of its application have proven its soundness and reasonableness, and particularly so with reference to railroads. When these rules are applied to the case presented here, appellees must be denied the relief sought. The Legislature, in its discretion, has conclusively determined that a public necessity exists for the exercise of the power of eminent domain to accomplish the purposes of the act in question, and has lawfully delegated that power to a railroad corporation, which is under the law a public highway and common carrier, and which, shorn of the power to discriminate, is open to the use of the public at large. These facts exist as a matter of law, and conclusively constitute the use of the property to be taken as a public use.

[6] But we do not think it necessary to invoke these rules in this cause. We think the facts set out in appellees' sworn pleadings themselves affirmatively show such public use of the land sought to be condemned as to come within the purview of the Constitution and statute. As we have said, the status of a railroad, as such, is not determined by its length; whether it is a mile long, or a thousand miles long, it is a railroad nevertheless. Railway v. Grain Co., 52 Tex. Civ. App. 156, 114 S. W. 436; Railway v. Grocery Co., 55 Kan. 525, 40 Pac. 899; U. S. v. Stock Yards Co. (D. C.) 161 Fed. 919; U. S. v. Stock Yards (C. C.) 162 Fed. 556. Nor does the fact that the railroad traverses only an undeveloped country affect the question under consideration. This has been true of nearly all pio-

neer railroads. Development of the country
has invariably followed the construction of
such roads, industry is encouraged, natural
resources are uncovered and rendered avail-
able, fields of employment and activity en-
larged, and the products of this development
are transported, by the very agency which
made them available, to other parts of the
country to add to the welfare, comfort, and
convenience of the general public, and thus
are created the public benefits and uses
which warrant the exercise of the power of
eminent domain. In this particular case the
primary objective of the road is to supply a
means of transportation of the products of
an asphalt mine, which has become an im-
portant, if not essential, industry in this
state. If its purposes or usefulness were re-
tricted to that one particular use, or if the
uses to which it is to be put were optional
with the corporation, a different question
might be presented. But its uses are not,
and cannot lawfully be, so restricted. If the
product of this particular mine is so certain
and of such magnitude as to warrant the
construction over difficult ground of a line
of railroad for the purpose of transporting it,
as seems to be the case, then the general pub-
lic may, and probably will, explore and de-
velop that entire section, for this or any oth-
er mineral, and the product of such develop-
ment, or any present or future development,
industry, or activity, will be afforded an
outlet, and this outlet becomes a public use
to which individual property rights must
yield when compensated for under the law.

We conclude that subdivision 54 of article
1121 is valid as against the objections raised
by appellees, and that the purposes of the
Kinney & Uvalde Railway Company, as a
matter of law, and particularly under the
facts alleged by appellees, constitute such
public use as to entitle it to exercise the pow-
er of eminent domain given it under the
terms of the act in question.

[7] We recur, then, to the question of
whether or not the statutes afford any meth-
od of procedure by which the corporation
here involved may lawfully condemn lands
for the use of its right of way. Article 1121,
under which the corporation obtained its
charter, provides no method of condemnation,
either directly or by adoption of a method
provided by any other statute, and appellees
contend that these facts render the corpora-
tion without any such means. It is conceded
by the company that unless the methods of
proceeding provided in the general railroad
condemnation statutes (chapter 8, tit. 115, art.
6481 et seq.) are available to it for the purpose
of condemning lands for its use, it is without
any method for that purpose, but contends
that those statutes do in fact apply to it,
thus giving it a full remedy. The decision
of the question has not been without its dif-
ficulties, but we have reached the conclusion
that the provisions of the general statute
were intended to apply to corporations or-
ganized under section 54, art. 1121, and were
available to appellant railway company. The
provisions of the general statute are by ex-
press terms made to apply to "any railroad
corporation," and while appellant company
was not organized under the general railroad
statutes (title 115) it is nevertheless a "rail-
road corporation," and nothing else, and we
perceive no reason for excluding it from the
operation of a statute which precisely de-
scribes it in designating the corporations
subject to the provisions thereof. The arti-
cles providing a method of condemnation in
title 115 are not made to apply only to "any
railroad corporation incorporated under the
provisions of this title," but to "any railroad
corporation." As the Legislature did not
see fit to expressly restrict the operation of
the provisions of the general statute to rail-
road corporations created thereunder, we are
without authority to interpolate that restric-
tion into it.

The judgment heretofore entered herein
will be set aside and the opinion thereon
withdrawn, and it is now ordered that the
judgment of the court below be reversed, and
judgment here rendered that the injunction
be dissolved.