NUMBER 13-98-126-CV





COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI


___________________________________________________________________



W.W. MERCIER AND 

BETTY J. MERCIER
, Appellants,


v.



MIDTEXAS PIPELINE COMPANY
, Appellee.

___________________________________________________________________


AND


__________________________________________________________________

NUMBER 13-98-127-CV



MIDTEXAS PIPELINE COMPANY, Appellant,


v.



W.W. MERCIER, Appellee.

___________________________________________________________________


AND



___________________________________________________________________

NUMBER 13-98-128-CV



JOHN C. MERCIER AND

W.W. MERCIER, Appellants,


v.



MIDTEXAS PIPELINE COMPANY, Appellee.

___________________________________________________________________


On appeal from the 2nd 25th District Court


of Gonzales County, Texas.


___________________________________________________________________


AND


__________________________________________________________________

NUMBER 13-98-155-CV



W.W. MERCIER AND

BETTY J. MERCIER, Appellants,


v.



TECO PIPELINE COMPANY, Appellee.

___________________________________________________________________


AND


___________________________________________________________________

NUMBER 13-98-156-CV



W.W. MERCIER, Appellant,


v.



TECO PIPELINE COMPANY, Appellee.

___________________________________________________________________


AND


___________________________________________________________________

NUMBER 13-98-157-CV



JOHN C. MERCIER

AND W.W. MERCIER, Appellants,


v.



TECO PIPELINE COMPANY, Appellee.

___________________________________________________________________


On appeal from the 25th District Court


of Gonzales County, Texas.


___________________________________________________________________


O P I N I O N



Before Justices Dorsey, Hinojosa, and Rodriguez


Opinion by Justice Dorsey



 This is a statutory condemnation proceeding. Landowners whose
land was condemned for a pipeline right of way appeal the taking and
the pipeline appeals the award of one of the landowners. The right of
the pipeline to condemn the land under the power of eminent domain
is challenged. We affirm. 

 MidTexas Pipeline Co. (MidTexas) is a partnership consisting of
Teco Pipeline Co. (Teco) and Houston Pipe Line Co., with Teco as the
managing partner. In 1995 MidTexas began acquiring property
necessary to build a thirty-inch natural-gas pipeline from Gonzales
County, Texas near the town of Dewville to Katy, Texas. In order to
complete the project MidTexas had to acquire a right-of-way and
permanent easement over three tracts of land owned by appellants,
W.W. (William) Mercier, his wife Betty, and William's cousin, John C.
Mercier. MidTexas negotiated with William to obtain the right-of-way
over the three tracts of land; however, the parties could not reach an
agreement. As a result MidTexas sought to acquire the right-of-way
and easement through eminent domain by filing three separate petitions
for condemnation of property in the 25th District Court of Gonzales
County. MidTexas filed one petition (Cause No. 13-98-126-CV) against
William and Betty Mercier. It filed the second petition (Cause No. 13-98-127-CV) against William Mercier, and it filed the third petition (Cause
No. 13-98-128-CV) against William and John C. Mercier. Each petition
sought a right-of-way and permanent easement, plus a temporary
easement on a separate tract of land.

 The judge of the 25th District Court appointed three special
commissioners to assess the actual damages that appellants would
incur due to the condemnation proceedings. After hearing evidence and
argument the special commissioners made the following awards: (1)
in Cause No. 13-98-126-CV they awarded William and Betty Mercier
$1,000 in damages; (2) in Cause No. 13-98-127-CV they awarded
William Mercier $170; and (3) in Cause No. 13-98-128-CV they awarded
William and John C. Mercier $7,500. The special commissioners also
awarded MidTexas all of the rights requested in its petitions for
condemnation. The awards were deposited in the registry of the court,
and MidTexas ultimately built the pipeline across the three tracts of
land.

 After the special commissioners awarded the damages appellants
filed objections and exceptions to the special commissioners' award,
thus converting the administrative proceeding into a pending cause in
the trial court.

 Prior to trial, the trial court resolved the jurisdictional issues in
MidTexas' favor, and the case proceeded to trial on the compensation
issue. The jury reached a verdict that (1) the difference between the
market value of the W.W. Mercier and Betty J. Mercier tract of land
before and after MidTexas's taking of the easement was $1,100, (2)
W.W. Mercier should receive $35,000 for his damages resulting from
the condemnations in Cause Nos. 13-98-127-CV and 13-98-128-CV and
the installation of the pipeline on the properties described therein and
upon the property described in Cause No. 13-98-126-CV, and (3) that
the difference between the market value of John C. Mercier's tract of
land before and after MidTexas's taking of the easement was $10,000.

The Judgments


 In Cause No. 13-98-126-CV the trial court ordered that MidTexas
recover from W.W. Mercier and Betty J. Mercier the permanent right-of-way and easement and that the Merciers recover from MidTexas $100
as damages which was the amount the jury's verdict exceeded the
$1,000 deposited in the court's registry. In Cause No. 13-98-127-CV
the trial court ordered that W.W. Mercier recover from MidTexas
$34,830 which was the amount the jury's verdict exceeded the $170
deposited in the court's registry. In Cause No. 13-98-128-CV the court
ordered that MidTexas recover from John C. Mercier a permanent right-of-way and easement and that he recover from MidTexas $2,500,
which was the amount the jury's verdict exceeded the $7,500 award
deposited in the court's registry.

Public Use


 By their first and third issues, William and Betty Mercier assert
that MidTexas took their property for private use without any judicial
consideration of whether MidTexas would devote the property for
public use. Article 1, section 17 of the Texas Constitution provides that
without consent a person's property may not "be taken . . . for or applied
to public use without adequate compensation being made. . . ." Tex.
Const. art. 1, § 17. This provision means that one's property may only
be taken without his consent for public use; a taking for private use is
prohibited. Maher v. Lasater, 354 S.W.2d 923, 924 (Tex. 1962). "That
provision not only requires the payment of adequate compensation for
property taken for public use, it prohibits the taking of property for
private use." Id.

 The right of eminent domain granted by the constitution resides
in the legislature, and the legislature may declare the conditions of its
use as well as granting the authority to exercise the right to non-governmental entities, so long as the exercise is for a public use. State
v. City of Denton, 542 S.W.2d 224, 226 (Tex. Civ. App.--Fort Worth
1976, writ ref'd n.r.e.).(1) The determination of what constitutes a public
use justifying the grant of the right of eminent domain is properly a
political decision, and as such is for the legislature. Coastal Indus.
Water Auth. v. Celanese Corp. of America, 592 S.W.2d 597, 600 (Tex.
1979) (stating "[i]n the absence of allegations that the condemnor acted
arbitrarily or unjustly, the legislature's declaration that a specific exercise
of eminent domain is for public use is conclusive, and the
condemnation proceedings are limited to a determination of the amount
to be paid to acquire that use").

 It seems to be a settled rule that where the use for which
property is sought to be taken under the power of eminent
domain is public, the necessity and expediency of exercising
the power, and the extent to which the property thereunder
is to be taken, are political or legislative, and not judicial,
questions, the legislative determination of which is
conclusive, and not reviewable, by the courts. Those
questions rest wholly within the legislative discretion.


West v. Whitehead, 238 S.W. 976, 978 (Tex. Civ. App.--San Antonio
1922, pet. denied).

 However, whether a given set of facts constitutes a public or
private use is ordinarily a question of law for the court to decide. 
Anderson v. Teco Pipeline Co., 985 S.W.2d 559, 565 (Tex. App.--San
Antonio 1998, no writ); Tenngasco Gas Gathering Co. v. Fischer, 653
S.W.2d 469, 474 (Tex. App.--Corpus Christi 1983, writ ref'd n.r.e.). "It
is equally well settled that the question of whether the use for which
private property is taken is a public use is a judicial question, to be
determined in the courts, although where the Legislature declares a
particular use to be a public use the presumption is in favor of this
declaration, and will be binding upon the courts unless such use is
clearly and palpably of a private character." West, 238 S.W. at 978.

 The power of eminent domain must be conferred by the
legislature, either expressly or by necessary implication, and will not be
construed from doubtful inferences. Burch v. City of San Antonio, 518
S.W.2d 540, 544 (Tex. 1975); Coastal States Gas Producing Co. v. Pate,
309 S.W.2d 828, 831 (Tex. 1958). In Pate the supreme court explained
how courts should construe statutes granting this power:

 Statutes granting the . . . [power of eminent domain] are
strictly construed in favor of the landowner and against
those corporations and arms of the State vested therewith.


 Strict construction is not, however, the exact converse
of liberal construction, for it does not require that the words
of a statute be given the narrowest meaning of which they
are susceptible. The language used by the Legislature may
be accorded a full meaning that will carry out its manifest
purpose and intention in enacting the statute, but the
operation of the law will then be confined to cases which
plainly fall within its terms as well as its spirit and purpose.


Pate, 309 S.W.2d at 831.

 The Authority to Condemn

 Appellees rely on Articles 1435 and 1436 for the legislative grant
of their claimed right of eminent domain.

 Article 1435 of the Texas Revised Civil Statutes provided, in part:

 Gas, electric current and power corporations shall have
power to generate, make and manufacture, transport and
sell gas, electric current and power to individuals, the public
and municipalities for light, heat, power and other purposes,
and to make reasonable charges therefor; . . . to own, hold
and use such lands, right of way, easements, franchises,
buildings and structures as may be necessary for the
purpose of such corporation. In Articles 1435 through 1438,
the term "corporation" includes partnerships. . . .


Act of June 19, 1987, 70th Leg., R.S., ch. 1079, § 1, 1987 Tex. Gen.
Laws 3684, 3684-85 (current version at Tex. Util Code Ann. §§
181.007-008 (Vernon 1998) (effective September 1, 1997)) (emphasis
added).

 Article 1436 provided: "Such corporation shall have the right and
power to enter upon, condemn and appropriate the lands, right-of-way,
easements and property of any person. . . ." Act of May 26, 1967, 60th
Leg., R.S., ch. 306, § 1, 1967 Tex. Gen. Laws 730, 730 (current version
at Tex. Util. Code Ann. § 181.004 (Vernon 1998) (effective September
1, 1997)).

 It is undisputed that the pipeline here is not a common carrier, has
not posted or filed tariff schedules with the Railroad Commission, does
not transport gas or allow the dedication of its capacity to the public or
anyone other than Teco Pipeline Company and Houston Pipe Line
Company, and does not deliver natural gas to anyone for light, heat,
power or other purposes from the pipeline segment between New
Braunfels and Dewville. The gas that is transported is that of the two
partners in Mid Texas Pipeline: Teco and Houston Pipe Line Company.

 The two questions are whether the pipeline qualifies under article
1435 so as to be entitled to exercise eminent domain power and, under
the circumstances, is such a use for a public purpose. We answer both
in the affirmative.

 Article 1435 states that a gas corporation, which includes
partnerships, shall have the power to transport and sell gas. It is
undisputed that the pipeline at issue is to transport gas to a distribution
facility where it will eventually be sold. We do not find it critical that the
gas transported is not owned by Mid-Texas, but rather by its partners. 
We hold that Mid-Texas Pipeline qualifies under the former Article 1435
as a gas corporation and is therefore imbued with the right of eminent
domain under 1436.

 The next issue is whether such a general and broad grant as
applied to Mid-Texas here is for a "public purpose," and is in
accordance with the constitutional rule requiring the taking of private
property solely for public purposes. 

 Our review of the relevant cases has not revealed one in which the
grant by the legislature, or its applicability to the entity claiming the
right of eminent domain, has been successfully challenged. Some
distinctions can be drawn between the principal cases in which Articles
1435 and 1436 constituted the authority of the pipeline's
condemnation. Anderson, 985 S.W.2d at 564 (holding that a
corporation operating a gas pipeline has the power of eminent domain
if it devotes its private property and resources to public service and
allows itself to be publicly regulated); Loesch v. Oasis Pipeline Co., 665
S.W.2d 595, 598­99 (Tex. App.--Austin 1984, writ ref'd n.r.e.)
(ownership of publicly regulated pipeline is "public use"); Tenngasco
Gas Gathering Co., 653 S.W.2d at 476 (holding that because legislation
bestowing power was not "manifestly wrong or unreasonable," fact
that use of property by pipeline company was covered by statute made
it a public use); Roadrunner Investments v. Texas Utilities Fuel Co., 578
S.W.2d 151 (Tex. Civ. App.--Ft. Worth 1979, writ ref'd n.r.e.) (Railroad
Commission had right to allocate the company's gas and so is publicly
regulated).

 Tennagasco Gas Gathering Co. involved the construction of a
pipeline to a petrochemical plant. 653 S.W.2d at 475. The owner of
the pipeline transported gas to the plant and intended to reverse the
flow at some future date, shipping synthetic gas from the plant. Id. 
However, at the time of the appeal, only natural gas had been sent to
the plant. Id. This court upheld the taking in the face of a challenge
that it was for a private purpose and therefore contrary to the
constitution, saying: 

 Further, the legislative declaration that a use is public and
the delegation of power of eminent domain is to be given
great weight by the court in reviewing a complaint that a
particular use, sanctioned by the legislature is, in fact,
private. Davis v. City of Lubbock, supra, 326 S.W.2d at 704; 
Housing Authority v. Higginbotham, supra, 143 S.W.2d at
84; West v. Whitehead, supra. Such declaration is binding
on the court unless it is manifestly wrong or unreasonable,
or the purpose for which the declaration is enacted is "clearly
and probably private." West v. Whitehead, supra, at 978;
See also Davis v. City of Lubbock, supra.; Housing Authority
v. Higginbotham, supra; Comment, Public Use as a
Limitation on the Power of Eminent Domain in Texas, 44
Tex. L. Rev. 1499, 1502-03 (1966).

 

Id. at 475.


 We cannot say that the purpose here is clearly private, manifestly
wrong, or unreasonable. The legislature by its enactment has
determined the importance to the public of moving natural gas from the
producing areas to where it can be used. Probably no truer statement
can be found in this area of Texas law than that by the supreme court
in Coastal States Gas Producing Co. v. Pate, "As pointed out in Housing
Authority v. Higginbotham, [143 S.W.2d 79, (Tex. 1940)], this Court has
adopted a rather liberal view as to what is or is not a public use." Pate,
309 S.W.2d at 833. Accordingly, we find that the use at issue in this
case qualifies as a "public use" so as not to offend the Constitution.

Jurisdiction


 By their second issue the Merciers argue that the court lacked
jurisdiction to grant MidTexas' condemnation petition because there is
no evidence to show that: (1) MidTexas' governing body had
determined that the Mercier property was necessary for its pipeline
project; and (2) that MidTexas engaged in good-faith negotiations when
trying to secure the easements from them.

1. Necessity


 Articles 1435 and 1436 give MidTexas the right to exercise the
power of condemnation. Courts which have construed these articles
have concluded that they do not require the condemnor to show that
the property was "necessary" for public use in order to be condemned. 
See, e.g., Valero Eastex Pipeline Co. v. Jarvis, 990 S.W.2d 852, 856
(Tex. App.--Tyler 1999, pet. denied); see also, generally, Laura A.
Hanley, Comment, Judicial Battles Between Pipeline Companies and
Landowners: It's Not Necessarily Who Wins, but By How Much, 37
Hous. L. Rev. 125 (2000) (providing a thorough discussion of the
condemnation process when initiated by a pipeline company). When
a statute delegating the power of eminent domain does not require
proof of necessity the condemnor need only show that its board of
directors determined that the taking was necessary. Anderson, 985
S.W.2d at 565. See Bevley v. Tenngasco Gas Gathering Co., 638
S.W.2d 118, 121 (Tex. App.--Corpus Christi 1982, writ ref'd n.r.e.). This
determination is conclusive absent fraud, bad faith, abuse of discretion,
or arbitrary or capricious action. Anderson, 985 S.W.2d at 565-66. 
Therefore, once a company establishes that its right to condemn is
derived from articles 1435 and 1436 and that its board of directors has
determined that the taking was necessary, a court should approve the
taking unless the landowner shows fraud, bad faith, abuse of
discretion, or arbitrary and capricious action. Id.

 In this case the evidence included a resolution from MidTexas and
a general partnership agreement. Section 6.01 of the agreement stated
that a management committee comprised of two representatives and
one alternate for each partner (Teco and Houston Pipe Line Co.) will
govern MidTexas. The resolution stated that MidTexas needed to build
and operate the pipeline to serve a public purpose. After extensive
investigation by MidTexas, the best selected route of the pipeline to
serve its public purpose will begin near Dewville and proceed through
Gonzales County to Katy, Texas. Two representatives from both Teco
and Houston Pipe Line Co. signed the resolution.

 We conclude that the resolution was sufficient to satisfy the
"necessity" requirement because it showed that the taking of the
property was necessary to serve a public purpose. MidTexas was not
required to produce a resolution finding that the Merciers' land was
necessary for the pipeline project. See id. at 566. The Merciers have
not shown that MidTexas engaged in fraud, bad faith, abuse of
discretion, or arbitrary or capricious action. Although MidTexas did not
have a board of directors to make the determination of necessity, its
management committee could do so. See Maberry v. Pedernales Elec.
Coop., 493 S.W.2d 268, 271 (Tex. Civ. App.--Austin 1973, writ ref'd
n.r.e.) (governing body or other authority having power to speak and act
for condemnor can determine necessity).

2. Good-Faith Negotiations


 In statutory condemnation proceedings the condemnor must show
that it was unable to agree with the landowner on the amount of
damages for the property. State v. Schmidt, 894 S.W.2d 543, 544 (Tex.
App.--Austin 1995, no writ). This condition refers to a bona-fide
attempt to agree on damages, which includes a bona-fide offer by the
condemnor to pay the estimated true value of the land. Marburger v.
Seminole Pipeline Co., 957 S.W.2d 82, 88-89 (Tex. App.--Houston [14th
Dist.] 1997, writ denied); Schmidt, 894 S.W.2d at 544-45. The
condemnor may satisfy the unable-to-agree requirement by making a
bona-fide offer to a landowner that the condemnor in good faith feels is
the amount of compensation due, and the landowner rejects that offer. 
State v. Hipp, 832 S.W.2d 71, 77-78 (Tex. App.--Austin 1992, writ
denied).

 The trial court held a hearing on the Merciers' challenge to its
jurisdiction. At the hearing MidTexas' counsel asked William Mercier,
"[T]he gentleman who was negotiating with you for that right-of-way
. . . offered you twice as much as you believed the property was worth
even as late as January, 1996, isn't that right?" Mercier replied that he
was offered $1,800 per acre for the permanent right-of-way and $300
for the temporary right-of-way. Mercier stated that he did not really
know what the property was worth, but this was "twice what the
Appraisal District had it appraised at."

 Thus, the evidence showed that MidTexas made a bona-fide
attempt to agree on damages because it made a bona-fide offer to pay
an amount which was twice the value set by the appraisal district. The
evidence does not show that MidTexas made an arbitrary or capricious
offer. We hold that MidTexas met the unable-to-agree requirement and
that it engaged in good-faith negotiations with the Merciers. See Hipp,
832 S.W.2d at 78. We overrule the second issue.

MidTexas' Cross Issues


 By two cross-issues MidTexas asserts that the trial court erred by
allowing John and William Mercier to testify about damages because
they did not disclose themselves as expert witnesses in response to
discovery. MidTexas also asserts that there is no evidence to support
the jury's findings on damages for William and John Mercier.

A. John Mercier


 During trial the Merciers' counsel asked John Mercier what sum
of money would reasonably compensate him for his damages resulting
from the condemnation and installation of the pipeline on his property. 
MidTexas' counsel objected that John was not properly designated as
an expert witness. The court overruled the objection, and John replied,
"$10,000." The jury awarded him this amount.

 Lay witnesses may testify to the value of their real property if they
can show a basis for their knowledge. Barraza v. Koliba, 933 S.W.2d
164, 169 (Tex. App.--San Antonio 1996, writ denied); Burford Oil Co. v.
Wadley, 41 S.W.2d 689, 694 (Tex. Civ. App.--El Paso 1931, writ ref'd). 
We will not disturb a trial court's decision to allow a lay witness to
testify about the market value of his property unless a clear abuse of
discretion is shown. Hochheim Prairie Farm Mut. Ins. Ass'n v. Burnett,
698 S.W.2d 271, 276 (Tex. App.--Fort Worth 1985, no writ).

 In the instant case when counsel asked John the basis for the
$10,000 figure he replied that this was MidTexas' final offer to him prior
to initiating condemnation proceedings. Because John stated a
reasonable basis to support the $10,000 figure we conclude that the
court did not abuse its discretion by admitting this testimony into
evidence. We hold that the evidence is sufficient to support the jury's
award of $10,000.

B. William Mercier


 During trial counsel asked William Mercier what sum of money
would reasonably compensate him for his damages resulting from the
condemnation and installation of the pipeline on his property. At this
point MidTexas' counsel made a hearsay objection, which the court
overruled. William's testimony showed that MidTexas had offered him
$1,100 in damages. The jury awarded this amount to him. 

 To preserve error an objection must state the specific grounds for
the desired ruling if those grounds are not apparent from the context of
the objection. Tex. R. App. P. 33.1(a); McKinney v. National Union Fire
Ins. Co., 772 S.W.2d 72, 74 (Tex. 1989). In the instant case MidTexas
did not object to William's testimony on the basis that he was not
disclosed as an expert witness. We hold that MidTexas did not
preserve their complaint for appellate review and that the evidence is
sufficient to support the jury's award of damages. We overrule the
cross-issues.

MidTexas' Cross Appeal


(Cause No. 13-98-127-CV)



 By its first issue MidTexas asserts that the trial court erred in
admitting evidence of property damages which are not recoverable as
a matter of law. Special question three asked, "What sum of money, if
paid now in cash, would fairly and reasonably compensate W.W.
MERCIER and BETTY J. MERCIER for their damages, if any, resulting
from the condemnation for and installation of the pipeline on their
property caused by Teco Pipeline Company?" The jury awarded
$35,000.

 During the trial of this case the Merciers' counsel offered Exhibit
41 into evidence "for all purposes as a summary of . . . [William
Mercier's] testimony regarding damages." The trial court admitted it in
evidence without objection. Exhibit 41 is an itemized list of damages
which Mercier incurred from the pipeline's construction. The damages
totaled $36,108.

 Because MidTexas did not object to this evidence nothing is
preserved for our review. Tex. R. App. P. 33.1(a). The amount of
damages shown in Exhibit 41 supports the award of $35,000.

 MidTexas further complains that the judgment required it to
compensate William Mercier for $35,000. MidTexas points out that
special question three, supra, on which the judgment was based
inquired about the conduct of Teco Pipeline Co., which was not a party
to this proceeding. MidTexas argues that the judgment cannot stand
because the jury found no such conduct on the part of MidTexas.

 In the instant case Teco was the managing general partner of
MidTexas. Teco's actions as the managing general partner bound
MidTexas. Hoggett v. Brown, 971 S.W.2d 472, 491 (Tex. App.--Houston [14th Dist.] 1997, no writ). Any omitted question to that effect
concerning agency must be deemed in favor of the judgment. See
Insurance Co. of N. Am. v. Morris, 928 S.W.2d 133, 143 (Tex. App.--Houston [14th Dist.] 1996), aff'd in part and rev'd in part on other
grounds, 981 S.W.2d 667 (Tex. 1998). We overrule this issue.

 The Merciers' Suits Against Teco


(Cause Nos. 13-98-155, 156, 157-CV)



 By their first issue the Merciers assert that Teco's attempt to take
their property for its private benefit under the guise of a public benefit
constituted fraud. By their third issue they complain that there was a
fact question for the jury about whether fraud had occurred in
connection with Teco's taking of their property.

 To recover on a fraud action a plaintiff must prove that: (1) a
material representation was made; (2) it was false; (3) when the
speaker made the representation he knew it was false or made it
recklessly without any knowledge of the truth and as a positive
assertion; (4) the speaker made it with the intention that it should be
acted upon by the party; (5) the party acted in reliance upon it; and (6)
the party thereby suffered injury. Green Int'l, Inc. v. Solis, 951 S.W.2d
384, 390 (Tex. 1997). 

 The evidence does not show that, when any agent for Teco or
MidTexas represented to the Merciers that either Teco or MidTexas was
taking their property for a public benefit, the agent knew that the
representation was false or that the agent made the representation
recklessly without any knowledge of the truth and as a positive
assertion. Thus the evidence does not support the Merciers' fraud
claim against Teco, and the court did not err in refusing to submit a
question on this issue to the jury. We overrule the first and third issues.

 By their second issue the Merciers assert that the circumstances
regarding the condemnation proceeding raised fact questions for the
jury to decide. They complain of the trial court's refusal to submit the
following questions to the jury: (1) "Do you find from a preponderance
of the evidence that MidTexas Pipeline Company does not transport and
sell gas at regulated rates through the pipeline installed on Landowners'
property to individuals, the public and municipalities for light, heat,
power and other purposes?"; (2) "Do you find from a preponderance of
the evidence that MidTexas Pipeline Company does not devote its
private property and resources to public service?"; and (3) "Do you find
from a preponderance of the evidence that Teco Pipeline Company
knowingly condemned the MERCIER property for a private purpose?"

 The proposed jury questions were properly refused by the trial
judge. They all go to the authority of the pipeline company to condemn
the land, an issue that was appropriately determined as a matter of law
by the court. West v. Whitehead, 238 S.W. at 978 (cited with approval
in Higginbotham, 143 S.W.2d at 83) Anderson, 985 S.W.2d at 565;
Tenngasco Gas Gathering Co., 653 S.W.2d at 474. "[W]here the
Legislature declares a particular use to be a public use the presumption
is in favor of this declaration, and will be binding upon the courts unless
such use is clearly and palpably of a private character." West, 238 S.W.
at 978. Because the matter had been determined as a matter of law by
the court, to submit underlying questions to the jury would serve no
purpose. 

 Here the claim is that although the determination may be a matter
of law, certain underlying factual determinations are necessary in order
to make that determination. However, the trial court's jurisdiction in
a condemnation action is dependent upon the right of the condemnor
to take. Cf. Hipp, 832 S.W.2d at 75 (noting that the question of
whether the condemnor was unable to agree with landowner regarding
amount of damages a matter of jurisdiction). A court has the right to
determine its own jurisdiction as a matter of law, even if that
determination implicitly involves the resolution of fact issues. Id. at
75­76. Accordingly, the trial court was not required to submit
questions concerning its jurisdiction to be determined by the jury. 
These proposed questions all went to the right of the condemnor to
take, and thus were jurisdictional for the court. 

 We therefore hold that the trial court did not err by refusing to
submit these questions to the jury. We overrule the second issue.

 Due to our disposition of the above issue we need not address
appellants' fourth issue. Tex. R. App. P. 47.1.

Frivolous Appeal


 William Mercier seeks sanctions under Rule 45,(2) Texas Rules of
Appellate Procedure, against MidTexas for filing the appeal in Cause No.
13-98-127-CV, which we previously addressed. In determining
whether sanctions are appropriate we must decide whether MidTexas
had a reasonable expectation of reversal or whether it pursued the
appeal in bad faith. Diana Rivera & Assocs., P.C. v. Calvillo, 986
S.W.2d 795, 799 (Tex. App.--Corpus Christi 1999, writ denied); Tate v.
E.I. DuPont de Nemours & Co., 954 S.W.2d 872, 875 (Tex.
App.--Houston [14th Dist.] 1997, no writ). In the instant case, although
we decided that MidTexas did not preserve the alleged error for review
the record does not show that MidTexas pursued the appeal in bad
faith or that it had no reasonable expectation of reversal. MidTexas
brought forward sufficient arguments and citations for our
consideration. We hold that MidTexas' conduct does not warrant
sanctions.


 ______________________________

 J. BONNER DORSEY,

 Justice


Publish
.

Tex. R. App. P. 47.3(b).


Opinion delivered and filed

this 24th day of August, 2000.

1. [1]See also, e.g., Tex. Nat. Res. Code Ann ' 111.019 et seq. (granting
common carriers power of eminent domain for construction,
maintenance, or operation of a common carrier pipeline); Tex. Rev. Civ.
Stat. art.1417 (granting telegraph corporations the power of eminent
domain for the use of the corporation); Tex. Rev. Civ. Stat. art. 1435a
(granting power of eminent domain to certain oil and gas companies); 
Tex. Rev. Civ. Stat. art. 1439 (granting power of eminent domain to
sewer companies); Tex. Rev. Civ. Stat. art. 6535 (granting power of
eminent domain to certain railroad corporations); Tex. Rev. Civ. Stat. art.
1433 (granting power of eminent domain to water company "[w]hen
deemed necessary to preserve the public health").
2. [2]Rule 45 provides that "If the court of appeals determines that an
appeal is frivolous, it may-on motion of any party or on its own
initiative, after notice and a reasonable opportunity for response-award
each prevailing party just damages." Tex. R. App. P. 45.