

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable W. Lee O'Daniel
Governor of Texas
Austin, Texas

Dear Governor O'Daniel:

Opinion No. O-2313
Re: Whether or not the Gulf
Coast Water Company is a
utility company "of any
kind or character whatsoever"
within the meaning of Section
3, Acts 1934, 43rd Leg., 4th
C. S., Ch. 7, page 23.

We received your letter dated June 15, 1940, request-
ing our opinion on the following question:

"Is the Gulf Coast Water Company a
utility company?"

The Gulf Coast Water Company was incorporated in 1931
for the purpose of supplying water to the public for irrigation,
power, municipal and domestic purposes. The Company apparent-
ly was incorporated under subdivision 88 of Article 1302, Re-
vised Statutes 1925, since the "purpose clause" in its charter
is practically identical with the language in said article. It
is to be noted that said company has the authority under its
charter to engage in a type of business which has been declared
to be a public utility business. See Gulf States Utilities Co.,
vs. State, 46 S. W. (2d) 1018 (Writ of Error Refused).

We have been informed that the Gulf Coast Water Com-
pany obtains all of its water from the Colorado River; that
the company has approximately ninety (90) contracts for the
furnishing of water to rice farmers for irrigation purposes;
that the company furnishes water yearly to irrigate approximate-
ly thirty thousand (30,000) acres of land; that the company owns
pumping plants, canals, laterals, ditches, etc., used in furnish-

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

Honorable W. Lee O'Daniel, page 2

ing water to its customers and that the company does not own any interest in the land farmed to rice.

We deem it necessary to quote a part of Section 3, Acts 1934, 43rd Leg., 4th Called Session, Ch. 7, at page 23 since your query arises by virtue of the provisions of said Act. Said Section reads, in part, as follows:

"That no person shall be eligible for such appointment (to the board of directors of the Lower Colorado River Authority) if he has, during the preceding three years before his appointment been employed by an electric power and light company, gas company, telephone company, or any other utility company of any kind or character whatsoever." (Inclosure ours) ( Underscoring ours).

Before determining whether the Gulf Coast Water Company is a utility company within the meaning of the Act creating the Lower Colorado River Authority, it is proper to consider the evident intent of the Legislature in enacting that part of the above mentioned Act.

An inspection of Senate Bill No. 2, Acts 43rd Leg., 4th C. S., Ch. 7, page 19, reveals that power has been conferred upon the Lower Colorado River Authority, acting through its directors, to control, store, preserve, use, distribute and sell the waters of the Colorado River, to develop, generate, distribute and sell water power and electrical energy, to construct, maintain, use and operate facilities, and many other powers too numerous to mention here.

The Legislature intended that the directors of the Lower Colorado River Authority should be persons who would act for the best interests of the State. It therefore sought to and did disqualify those persons from being appointed to the Board of Directors of the Lower Colorado River Authority who, at the time of appointment, had been employed by any utility company within three (3) years preceding the date of the appointment. This safeguard was enacted to insure as far as possible that the affairs of the Lower Colorado River Authority would be carried on to the

Honorable W. Lee O'Daniel, page 3

best interests of the State rather than for the interest of private individuals.

In this connection, it has been called to our attention that the Gulf Coast Water Company has entered into a contract with the Board of Directors of the Lower Colorado River Authority for the purchase of water. It is readily seen that if a director, officer or other employee of the Gulf Coast Water Company is eligible for the appointment in question, he might well be more interested in seeing that the water company benefited rather than in protecting the best interests of the State.

In Title No. 128, Revised Civil Statutes, we find the following articles which we believe to be pertinent to the question herein involved. They are as follows:

"Article 7466. Public rights

"The conservation and development of all of the natural resources of this State, including the control, storing, preservation and distribution of its storm and flood waters, the waters of its rivers and streams for irrigation, power and all other useful purposes; the reclamation and irrigation of its arid, semi-arid and other lands needing irrigation; the reclamation and drainage of its overflowed lands, and other lands needing drainage; the conservation and development of its forest, water and hydro-electric power; the navigation of its inland and coastal waters, and the preservation and conservation of all such natural resources of the State are each and all hereby declared public rights and duties." (Underscoring ours)

"Article 7467. Property of the State

"The waters of the ordinary flow and underflow and tides of every flowing river or natural stream, of all lakes, bays or arms of the Gulf of Mexico, and the storm, flood or rain waters of every river or natural stream, canyon, ravine, depression or watershed, within the State of Texas, are hereby declared to be the property of the State, and the right to the use thereof may be acquired by appropriation in the manner and for the uses and purposes hereinafter provided, and may be taken or diverted from its natural channel for any of the purposes expressed in this chapter. When an application is made for appropria-

Honorable W. L. O'Daniel, page 4

tion of such water for mining purposes, the owner of
the land through which the water flows and which is to
be appropriated shall have the prior right to appropri-
ate same, and shall be permitted to exercise such right,
although such owner may not have made application prior
to such application by another, and such owner shall have
only ten days after the notice of application to appro-
priate such water in which to exercise his prior right
to appropriate, which he shall do by written application
filed with the Board of Water Engineers within such
time."

"Article 7555.  Possessory right

"All persons who own or hold a possessory right
or title to land adjoining or contiguous to any dam,
reservoir, canal, ditch, flume or lateral, constructed
and maintained under the provisions of this chapter,
and who shall have secured a right to the use of water
in said canal, ditch, flume, lateral, reservoir, dam
or lake, shall be entitled to be supplied from such
canal, ditch, flume, lateral, dam, reservoir or lake
with water for irrigation of such land, and for mining,
milling, manufacturing, development of power, and
stockraising, in accordance with the terms of his or
their contract."

"Article 7556.  Failure to agree upon price

"If the person, association of persons, or cor-
poration owning or controlling such water, and the
person who owns or holds a possessory right or title
to land adjoining or contiguous to any canal, ditch,
flume or lateral, lake or reservoir, constructed or
maintained under the provisions of this chapter, fail
to agree upon a price for a permanent water right, or
for the use or rental of the necessary water to irrigate
the land of such person, or for mining, milling, manu-
facturing, the development of power, or stock raising,
such person, association of persons, or corporation
shall, nevertheless, if he, they or it, have or control
any water not contracted to others, furnish the neces-
sary water to such person to irrigate his lands or
for mining, milling, manufacturing, the development
of power or stock raising, at such prices as shall be
reasonable and just, and without discrimination."

Honorable W. Lee O'Daniel, page 5

"Article 7563. Board to fix rates

"The said Board shall have power and authority, and it shall be its duty to fix reasonable rates for the furnishing of water for the purposes or any purpose mentioned in this chapter."

"Article 7570. Rules and regulations made and published

"Every person, association of persons, corporation, or irrigation district, conserving or supplying water for any of the purposes authorized by this chapter; shall make and publish reasonable rules and regulations relating to the method and manner of supply, use and distribution of water, and prescribing the time and manner of making application for the use of water and payment therefor."

"Article 7583. Additional right of way obtained

"Any person, association of persons, corporation, irrigation or water improvement district, or any city or town, may also obtain the right of way over private lands and also the lands for pumping plants, intakes, headgates and storage reservoirs, by condemnation, by causing the damages for any private property appropriated by any such person, association of persons, corporation, water improvement or irrigation district or city or town, to be assessed and paid for as provided by the Statutes of this State, and as provided in Title 52 of this Act relating to 'Eminent Domain' provided, however, that when the power granted by this section is sought to be exercised by any person or association of persons, but not including irrigation corporations, districts, cities or towns, he or they shall first make application to the Board of Water Engineers for such condemnation and said Board shall make due investigation and if it deems advisable shall give notice to the party owning the land sought to be condemned, and after hearing, may institute such condemnation proceedings in the name of the State of Texas for the use and benefit of said person or persons and all others similarly situated, the costs of said suit and condemnation to be paid by the person or persons at whose instance the same is instituted in proportion to the benefits received by each as fixed by said board and to be paid before use is made of such condemned rights of property; and thereafter all persons seeking to take the benefits of such condemnation proceedings shall make application therefor to the Board

Honorable W. Lee O'Daniel, page 6

of Water Engineers and if such application is granted shall pay fees and charges as may be fixed by the Board."

The Board of Water Engineers is vested with broad powers in regulating the use of water over which it has regulatory control. Because the Gulf Coast Water Company takes all of its water out of the Colorado River and sells it to rice farmers for the purpose of irrigating rice land, the said company is subject to regulation by the Board of Water Engineers as provided in Title 128, Revised Civil Statutes. Article 7555, supra, provides that the furnisher of water must supply water to "all persons who own or hold a possessory right or title to land adjoining or contiguous to any dam, reservoir, canal, ditch, flume or lateral" when they shall have secured a right to the use of the water. We are informed that some ninety (90) persons have secured the right to receive the water from the Gulf Coast Water Company.

Articles 7556 and 7557, provide, that water must be supplied at such prices as shall be reasonable and without discrimination. Article 7563 gives the Board of Water Engineers power and authority to fix reasonable rates for the use of the water. Article 7570 requires the furnisher of water to make and publish reasonable rules and regulations relating to the manner and method of supply, use and distribution, and prescribing the time and manner of making application for the use of water and payment therefor.

Article 7583 grants irrigation companies the right of eminent domain. To make certain that irrigation companies had the right to condemn land under Article 7583, the 44th legislature, Regular Session, 1935, enacted Senate Bill No. 156, Ch. 49, page 126, clarifying said article. The emergency clause of said Act reads as follows:

"Sec. 2. The fact that under the codification of 1925 the codifiers, or else the printers, left a question under the new laws of 1925 as to the powers of irrigation corporations to condemn land, which power has always been expressly recognized in Texas, and it is necessary to clear up the question and it is vital to the agricultural development of this State, creates an emergency and an imperative public necessity

Honorable W. Lee O'Daniel, page 7

that the Constitutional Rule requiring bills to be
read on three several days in each House be suspended,
and the same is hereby suspended, and that this Act
take effect and be in force from and after its passage,
and it is so enacted."

In the case of Colorado Canal Co., vs. McFarland and
Southwell, 94 S. W. 400, the Court of Civil Appeals went so far
as to say that the possession of the right of eminent domain
fixed the status of an irrigation company as a quasi public
corporation regardless of whether it exercises the power or not.

Mr. Justice Dibrell, speaking for the Supreme Court
of Texas in the case of Raywood Rice, Canal and Milling Co., vs.
W. F. Erp and W. E. Wright, 105 Texas 161, said:

"The granting of the power of eminent domain
imposes a public service in return. No authority
under our law exists for conferring the power of
eminent domain for private use. The moment such
power is granted the grantee becomes quasi public
in character and while his or its functions are ex-
ercised for profit they must be exercised in the in-
terest of the public upon reasonable terms and without
discrimination. * * *"

We quote from the case of American Rio Grande Land and
Irrigation Co., vs. Mercedes Plantation Co., 155 S. W. 286, (re-
formed and affirmed 208 S. W. 904), as follows:

"Appellant corporation was organized and charter-
ed under section 11, c. 21, p. 23, of the Acts of 1895
(R. S. 1911, art. 5002 et seq.), and follows the language
of that act in stating its purposes and powers. From
these powers grow, by operation of law, its duties, which
cannot be changed or lessened by its intentions. In
Borden v. Rice & Irrigation Co., 98 Tex. 494, 86 S. W.
11, 107 Am. St. Rep. 640, the Supreme Court of this state
held that such a charter creates a quasi public corpora-
tion which is charged with duties to the public commensu-
rate with the powers and privileges conferred upon it
by law. The Legislature in the above act has not very
clearly defined the rights of the public nor the duties
of the corporation, but a careful study of the language
of the act in the light of the well-established princi-
ples of law makes clear the meaning. As aptly said by
the learned judge who wrote the opinion in the Borden

Honorable W. Lee O'Daniel, page 8

Case, the powers of the corporation are conferred to enable it to appropriate water and to convey it 'to all persons entitled to the same;' to 'all persons who own or hold a possessory right or title to land adjoining or contiguous to any canal,' etc., and 'Who shall have secured a right to the use of water * * * in accordance with the terms of their contract.' In case of a shortage of water, a plan for prorating the supply is provided, and the sale of a permanent water right is made an easement upon the land which will pass with the title, etc. It is further provided that in case no contract can be agreed upon between the consumer and the irrigation company, the consumer shall nevertheless be entitled to water upon reasonable terms. Such language, aided by the rule of law that only public or quasi public corporations are endowed with the power of eminent domain, can only be understood to mean that out of the grant of power to the corporation shall grow, ipso facto, the right of the property owner to receive, upon reasonable terms, a fair proportion of the water taken from the water course and conducted through its canals, and that the power of the corporation to contract for the supply of water is limited to such subjects as do not conflict with the rights of the parties as fixed by the law. In the Borden Case the court, upon this subject, said: 'The power to contract, here given to the owner of the plant, cannot, if the business is to be regarded as affected with a public interest, be recognized as absolute and uncontrolled. Common carriers and others engaged in public callings have the power to contract, but it cannot be so employed as to absolve them from their duties to the public or to deprive others of their rights. Rights are evidently secured by this statute to those so situated as to be able to avail themselves of the water provided for, and those rights it is the duty of the owners of the contemplated business to respect; and the power to contract, under the well-recognized principles applicable to those charged with such duties, must be exercised in subordination to such duties and rights. Reasonable contracts are what this statute means, and not contracts employed as evasions of duty.' 98 Tex. 511, 86 S. W. 15, 107 Am. St. Rep. 640."

See 8 A. I. R. 268, 15 A. I. R. 1227 and 44 Tex. Jur. 339-369 for a full discussion and citation of authorities concerning the question of an irrigation company being a utility com-

Honorable W. Lee O'Daniel, page 9


pany.

From the above cited authorities, it is apparent that an irrigation company possesses many of the attributes common to the more generally known utility companies. Further, it seems to us that there are as many reasons, if not more, for disqualifying a director, officer or employee of an irrigation company than there would be of disqualifying a director, officer or employee of a gas or telephone company. Certainly, from a personal standpoint, it would seem that a person interested in a water company is in a much better position to profit from the appointment in question than a person interested in a gas or telephone company.

For the reasons herein stated, we are of the opinion that the Gulf Coast Water Company is a utility company within the meaning of Section 3, Acts 1934, 43rd Leg., 4th C. S., Ch. 7, p. 23. It follows that a director, officer or other employee of said company is ineligible to be appointed to the Board of Directors of the Lower Colorado River Authority as provided in said Act.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By _Glenn R. Lewis_
Glenn R. Lewis
Assistant

By _Lee Shoptaw_
Lee Shoptaw

APPROVED JUL 15, 1940

FIRST ASSISTANT
ATTORNEY GENERAL

LS:EP


APPROVED
OPINION
COMMITTEE
BY _____
CHAIRMAN